COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 MARTIN VIERA,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-10-00332-CR
  
                          Appeal from
  
 384th District
 Court
  
 of El Paso County,
 Texas
  
 (TC # 20090D02432)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

Martin Viera appeals his conviction of sexual assault (Count I), enhanced
by a prior felony conviction.  A jury
found Appellant guilty of Count I and the trial court assessed punishment.  The court found the enhancement allegation
true and assessed punishment at imprisonment for fifty years.  For the reasons that follow, we affirm.

FACTUAL SUMMARY

A grand jury returned a two-count indictment against Appellant.  Count I alleged that Appellant sexually
assaulted his sister, Irma Enriquez, without her consent.  Count II alleged that Appellant engaged in prohibited
sexual conduct with his sister.  The case
was tried before a jury.

Forty-four year old Irma Enriquez grew up in El Paso, Texas with her
younger sister and her younger brother, Appellant.  On March 17, 2009, Enriquez went to lunch
with her cousin, Christine Rosales. 
After lunch, Enriquez picked up Appellant and they went to the Ale House
where they were joined by Enriquez’s best friend, Irma Ontiveros, and
Rosales.  They drank at the Ale House for
approximately an hour and a half before going to Muggs.  Enriquez recalled that they drank beer and
shots of liquor but she did not know how much she had drunk.   She
described herself as “very intoxicated.” 
Enriquez did not know what time they left.  Despite being intoxicated, Enriquez drove
home with Appellant and she recalled falling asleep on her couch after watching
television.  The next thing she
remembered is waking up in her bed with Appellant on top of her.  She specifically testified that his penis was
inside her vagina and he was moving. 
Enriquez did not resist or fight because she was in shock.  After a short period of time, Appellant
rolled off of her and fell asleep. 
Enriquez quietly “creeped off” of her bed so as not to awaken Appellant.  She went into her bathroom to get her robe because
she was naked.  She grabbed her phone and
went outside to call 911.  She told the
operator that her brother had just raped her. 
The police and an ambulance arrived a few minutes later.  Enriquez recalled that one of her neighbors
waited with her.  On cross-examination,
Enriquez testified that she did not know how she got from the couch to her
bedroom, how her clothes were removed, or who removed them.  

            Sometime after midnight on March 18,
2009, Enriquez’s neighbor, Krystal Anne Molina, was driving home when she saw a
woman dressed in a bathrobe walking towards the street.  Molina continued down the street and pulled
into her driveway which was about four houses down.  The woman followed Molina to her house.  When Molina got out of her car, she saw that the
woman was talking on a cell phone and crying hysterically.  Molina heard her say, “My brother.  My brother. 
He’s still in the house.  My
brother.”  Molina put her arm around the
woman and asked if she was okay.  The
woman put all of her weight on Molina and just kept saying, “My brother.”  Molina could smell alcohol on the woman’s
breath.  By that time, the police and an
ambulance had arrived.  

The ambulance was dispatched at 1:37 a.m. and arrived a few minutes
later.  Marco Isaac Hernandez, an EMT, made
contact with Enriquez at the scene.  He
described her as hysterical and agitated. 
Hernandez recalled that Enriquez had a slight odor of alcohol on her
breath but she was alert and oriented. 
The ambulance transported Enriquez to the hospital and arrived there at
2:59 a.m.  

The sexual assault examination of Enriquez began at 7:18 a.m.  Courtney Perez, R.N., an emergency room
nurse, assisted Dr. Roberto Ochoa during the exam.  Dr. Ochoa did not observe any external or
internal injuries during the exam but he testified that the absence of physical
trauma did not mean that a sexual assault had not occurred.  Dr. Ochoa found non-motile sperm in the
vagina indicating that intercourse had occurred at least three hours before the
exam.  

The Texas Department of Public Safety Laboratory performed DNA testing on
the interior vaginal swabs collected during the sexual assault
examination.  Nicholas Ronquillo, a
forensic scientist, separated the sperm cells from the non-sperm cells in the
sample.  The DNA from the sperm cells
found on the vaginal swabs is consistent with Appellant’s DNA.  The probability of selecting an unrelated
person at random who could be the source of the DNA profile is approximately 1
in 1.431 quintillion for Caucasians, 1 in 264.7 quintillion for Blacks, and one
in 1.976 quintillion for Hispanics. 
Thus, Ronquillo testified that Appellant, to a reasonable degree of
scientific certainty, is the source of the sperm cell fraction of the vaginal
swab.  

Appellant called Christine Rosales and Irma Ontiveros to testify
regarding Enriquez’s degree of intoxication. 
Rosales said she was not qualified to guess Enriquez’s degree of intoxication
but Enriquez was not staggering and her speech was not slurred.  She recalled that Appellant was obnoxious and
tried to force her to drink a Jell-O shot with him.  She told the police in a statement that
Appellant was “highly intoxicated.” 
Ontiveros testified that Enriquez was not intoxicated that evening.  

The jury found Appellant guilty of Count I but found him not guilty of
Count II.  Appellant did not elect for
the jury to assess punishment.  During
punishment, the State introduced into evidence a pen packet establishing that
Appellant had been convicted in 2007 of aggravated assault with a deadly weapon
and sentenced to serve two years in prison. 
His ex-wife, Anna Margarita Garcia, testified that she was the
complainant in the aggravated assault case. 
During that assault, Appellant beat Garcia and threatened to kill her
with a knife.  Appellant hit her every
day of their marriage and she described her daily life as torture.  

Enriquez testified about the impact of the sexual assault on her
life.  She had become depressed and lost
her job as a result of the sexual assault. 
She had tried to commit suicide. 
The offense had also ruined her parents’ lives and had destroyed the
entire family.  

Appellant testified at the punishment stage and denied beating Garcia
every day.  With respect to Enriquez,
Appellant described their relationship as a normal brother-sister
relationship.  Appellant maintained that
he was extremely drunk when they left Muggs and he passed out in the car.  Enriquez took him into the bedroom and put
him in her bed.  She got him some water
and aspirin and told him if he needed to urinate or be sick to use the
bathroom.  Appellant felt sick and the
room was spinning so he put one foot on the floor.  Appellant passed out again and the next time
he woke up the police were pulling him out of the bed.  He could not explain how his sperm got inside
of his sister.  At the conclusion of the
punishment stage, the trial judge stated that he found it significant that the
offense occurred only four days after Appellant was released from prison.  The trial court found the enhancement allegation
true and assessed Appellant’s punishment at imprisonment for a term of fifty
years.  

SUFFICIENCY OF THE EVIDENCE

            In Issue One, Appellant challenges
the legal and factual sufficiency of the evidence supporting his conviction.  He argues that the evidence is insufficient
to prove that he penetrated the complainant’s vagina with his penis and without
her consent.

In Brooks v, State, the Court
of Criminal Appeals abandoned factual sufficiency review in those cases where
the burden of proof is beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful
distinction between the legal and factual sufficiency standards and no
justification for retaining both standards, therefore overruling the factual
sufficiency review adopted in Clewis v.
State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)).  The legal sufficiency standard articulated in Jackson v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court
applies in determining whether the evidence is sufficient to support a
conviction.  Brooks, 323 S.W.3d at 894-95.  Therefore, we will review the evidence under
the Jackson legal sufficiency
standard and determine whether the evidence is sufficient to support the challenged
elements beyond a reasonable doubt.  See Brooks, 323 S .W.3d 894-95, citing Jackson, 443 U.S. at 319, 99
S.Ct. at 2789.

Standard of Review

            Under the Jackson standard, a reviewing court must consider all evidence in
the light most favorable to the verdict and in doing so determine whether a
rational justification exists for the jury’s finding of guilt beyond a
reasonable doubt.  Brooks, 323 S.W.3d at 894-95, citing
Jackson, 443 U.S. at 319, 99 S.Ct. at 2789.  As the trier of fact, the jury is the sole
judge as to the weight and credibility of witness testimony, and therefore, on
appeal we must give deference to the jury’s determinations.  Brooks,
323 S.W.3d at 894-95.  If the record
contains conflicting inferences, we must presume the jury resolved such facts
in favor of the verdict and defer to that resolution.  Id.  On appeal, we serve only to ensure the jury
reached a rational verdict, and we may not reevaluate the weight and
credibility of the evidence produced at trial and in so doing substitute our
judgment for that of the fact finder.  King v. State, 29 S.W.3d 556, 562
(Tex.Crim.App. 2000).  In our review, we
consider both direct and circumstantial evidence and all reasonable inferences
that may be drawn from the evidence.  Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007).  The standard of
review as to the sufficiency of the evidence is the same for both direct and
circumstantial evidence cases.  Id.; Arzaga
v. State, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.).  Each fact need not point directly and
independently to the guilt of the accused, so long as the cumulative force of
all the evidence, when coupled with reasonable inferences to be drawn from that
evidence, is sufficient to support the conviction.  Id.  

Elements of Sexual Assault and Relevant Law

A person commits sexual assault if he intentionally or knowingly causes
the penetration of another person’s sexual organ by any means without that
person’s consent.  Tex.Penal Code Ann. § 22.011(a)(1)(A)(West
2011).  Count I of the indictment alleged
that Appellant penetrated Enriquez’s sexual organ with his sexual organ without
her consent.  The Penal Code sets forth
several circumstances in which a sexual assault is without the complainant’s
consent.  See Tex.Penal Code Ann.
§ 22.011(b)(1)-(11).  In this case, Paragraphs
A and B of Count I alleged lack of consent under Subsections (b)(3) and (b)(5)
respectively.  Under subsection (b)(3), a
sexual assault is without the other person’s consent if “the other person has
not consented and the actor knows the other person is unconscious or physically
unable to resist.”  Tex.Penal Code Ann. § 22.011(b)(3).  Under subsection (b)(5), a sexual assault is
without the other person’s consent if “the other person has not consented and
the actor knows the other person is unaware that the sexual assault is
occurring.”  Tex.Penal Code Ann. § 22.011(b)(5)(West 2011).  The uncorroborated testimony of the victim
alone is sufficient to support a conviction for sexual assault, as long as the
victim tells someone other than the defendant within a year of the offense.  Tex.Code
Crim.Proc.Ann. Art. 38.07(a)(West Supp. 2012); Quincy v. State, 304 S.W.3d 489, 497 (Tex.App.--Amarillo 2009, no
pet.). 

The Evidence

            Enriquez testified that she was “very
intoxicated” when she arrived at her house and the last thing she remembered
was falling asleep or passing out on her couch. 
She woke up in her bed and found Appellant on top of her with his penis
inside of her vagina.  Enriquez testified
that she would never have sex with her brother. 
This testimony, if believed by the jury, is sufficient to permit a jury
to rationally find beyond a reasonable doubt all of the elements of sexual
assault in that it proved Appellant penetrated Enriquez’s sexual organ with his
penis, she did not consent to the penetration, and she was unconscious or
asleep when the penetration occurred, and therefore, she was either unconscious
and unable to resist or unaware that it was occurring.  See
Tex.Penal Code Ann. § 22.011(a)(1),
(b)(3), (b)(5); Corbo v. State, No.
14-08-00201-CR, 2009 WL 5551376, at *5-6 (Tex.App.--Houston [14th Dist.] Sept.
24, 2009, no pet.)(mem. op.)(not designated for publication)(victim’s testimony
that defendant drugged her, she was unconscious when he had sex with her, and
she would not have had sex with him was sufficient under Article 38.07(a) to
support defendant’s conviction and showed lack of consent under Section
22.011(b)(3) or (b)(5)).  We overrule Issue
One.




 

EXCULPATORY EVIDENCE

            In Issue Two, Appellant contends
that the trial court erred by denying leave to depose persons of knowledge and
by not compelling the State to produce exculpatory or mitigating evidence.  The State first responds that the issue is
multifarious and should not be reviewed.

Multifarious Issue and Deficient Briefing

A
point of error or issue is multifarious if it embraces more than one specific
ground of error.  Mays v. State, 318 S.W.3d 368, 385 (Tex.Crim.App. 2010).  By combining independent grounds together in a
single issue, an appellant risks rejection of his arguments on the basis that
nothing has been presented for review.  See Wood v. State,
18 S.W.3d 642, 649 n.6 (Tex.Crim.App. 2000)(refusing to address multifarious
grounds).  A complaint that the
trial court erred by denying a defendant’s request to depose a witness is
distinct from a complaint that the State failed to disclose exculpatory or
mitigating evidence as required by Brady
v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  Thus, Issue Two is multifarious.  

Appellate
courts have discretion to address multifarious issues and often do so provided
that the issues are adequately briefed. 
While Appellant has briefed the Brady
issue, his brief does not adequately address the deposition issue.   He does not direct us to where in the record
he sought leave to depose a witness or the trial court ruled on such a request,
nor does his brief provide any argument or authorities in support of this
issue.  See Tex.R.App.P. 38.1(g), (i).  As an appellate court, it is not our task to
comb the record in an effort to verify an appellant’s claims.   See Alvarado
v. State, 912 S.W.2d 199, 210 (Tex.Crim.App. 1995).  Likewise, we are not obligated to construct
and compose an appellant’s issues, facts, and arguments for him.  Busby
v. State, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008).  Because Appellant has failed to brief the
deposition argument, we decline to address it. 
We will, however, address the Brady
issue.  

Exculpatory Evidence

Appellant
raised the Brady issue in his motion
for new trial.  He alleged that the State
failed to disclose a supplemental report by Officer J. Van Valen.  Appellant attached to his motion for new
trial an affidavit by a private investigator who related that he interviewed
Van Valen after the trial.  Van Valen told
the investigator that he entered the bedroom and found Appellant covered with a
bed sheet.  It appeared to Van Valen that
Appellant was pretending to be asleep. 
Van Valen told the investigator that Appellant was wearing a pair of
shorts and a T-shirt.  He said that he included
this information in a supplemental report. 
In its response to the motion for new trial, the State alleged that Van
Valen did not make any supplemental reports. 
The trial court conducted a hearing on the motion for new trial, but
Appellant did not offer any evidence in support of his Brady claim.  The prosecutor
stated in open court that she had checked the police computer system to make
sure that the State’s file was complete and contained every supplemental report
and witness statement and there were no supplemental reports.  The prosecutor acknowledged the investigator’s
affidavit and stated that Officer Van Valen did not create a supplemental
report and such a supplemental report did not exist.  Appellant did not call Officer Van Valen to
testify at the new trial hearing and he did not introduce the affidavit into
evidence.  The trial court did not rule on
the motion for new trial and it was overruled by operation of law.

An
appellate court reviews a trial court’s ruling on a motion for mistrial using
an abuse-of-discretion standard of review.  Webb v.
State, 232 S.W.3d 109, 112 (Tex.Crim.App. 2007).  We view the evidence in the
light most favorable to the trial court’s ruling and uphold that ruling if it
was within the zone of reasonable disagreement.  Id.  We do not substitute our judgment for
that of the trial court, but rather we decide whether the trial court’s
decision was arbitrary or unreasonable.  Id.  Thus, a trial court abuses its discretion in
denying a motion for new trial only when no reasonable view of the record could
support the trial court’s ruling.  Id.

In
Brady, the United States Supreme
Court concluded that the suppression by the prosecution of evidence favorable
to a defendant violates due process if the evidence is material either to guilt
or punishment, without regard to the good or bad faith of the prosecution.  Harm v.
State, 183 S.W.3d 403, 406 (Tex.Crim.App. 2006), citing Brady, 373 U.S. at 87, 83 S.Ct. at 1196-97.  A defendant must satisfy three requirements to
establish a Brady violation: (1) the State
suppressed evidence; (2) the suppressed evidence is favorable to defendant; and
(3) the suppressed evidence is material.  Harm,
183 S.W.3d at 406.  There can be no Brady violation without suppression of
favorable evidence.  Id.  Brady does not require prosecuting authorities to disclose
exculpatory information to defendants that the State does not have in its
possession and that is not known to exist. 
Id., 183 S.W.3d at 406-07.  

A
motion for new trial is not self-proving. 
Rouse v. State, 300 S.W.3d
754, 762 (Tex.Crim.App. 2009); Jackson v.
State, 139 S.W.3d 7, 20 (Tex.App.--Fort Worth 2004, pet. ref’d), citing Lamb v. State, 680 S.W.2d 11, 13
(Tex.Crim.App. 1984).  During a hearing
on a motion for new trial, a trial court may receive evidence by affidavits.  Tex.R.App.P.
21.7; Jackson, 139 S.W.3d at 20; Godoy v. State, 122 S.W.3d 315, 319
(Tex.App.--Houston [1st Dist.] 2003, pet. ref’d).  An affidavit attached to the motion is merely
“a pleading that authorizes the introduction of supporting evidence” and is not
evidence itself.  Jackson, 139 S.W.3d at 20, quoting
Stephenson v. State, 494 S.W.2d 900, 909-10 (Tex.Crim.App. 1973).  To constitute evidence, the affidavit must be
introduced as evidence at the hearing on the motion.  Rouse,
300 S.W.3d at 762; Stephenson, 494
S.W.2d at 909-10; Jackson, 139 S.W.3d
at 20.

Appellant
did not introduce the investigator’s affidavit into evidence at the new trial
hearing and he did not introduce any other evidence that would show that the
supplemental report actually existed.  Given
the absence of evidence to substantiate the Brady
claim, we conclude that the trial court did not abuse its discretion by failing
to grant the motion for new trial.  See State v. Herndon, 215 S.W.3d 901,
909 (Tex.Crim.App. 2007)(stating that the trial court does not abuse its
discretion by granting a new trial if the defendant:  (1) articulated a valid legal claim in his
motion for new trial; (2) produced evidence or pointed to evidence in the trial
record that substantiated his legal claim; and (3) showed prejudice to his
substantial rights under the standards in Rule 44.2 of the Texas Rules of
Appellate Procedure).  We overrule Issue Two. 

INCONSISTENT VERDICTS

AND JURY MISCONDUCT

            In his third issue, Appellant complains
that the trial court abused its discretion by denying his motion for new trial
on the grounds of jury misconduct and inconsistent verdicts. 

Jury Misconduct

            Appellant alleged jury misconduct in
his motion for new trial and attached the affidavit of one of the jurors,
Ramiro Galvan.  Galvan stated that he did
not believe Appellant was guilty but he was pressured by other jurors to find
Appellant guilty; several jurors wondered during deliberations why Appellant
had not testified; some jurors spoke about their own personal experiences; and
Galvan felt some jurors were biased because they said during deliberations that
they were moved by the complainant’s tears. 
During the new trial hearing, defense counsel did not offer the Galvan
affidavit into evidence and when he began to discuss it as part of his
argument, the prosecutor objected to the court considering the affidavit
because it was incompetent evidence under Tex.R.Evid.
606(b).  The trial court did not
expressly rule on the objection but pointed out to counsel that the affidavit
did not state that any outside influence was brought to bear upon the jurors.  By failing to offer the Galvan affidavit into
evidence at the new trial hearing, Appellant did not establish his entitlement
to a new trial.  See Rouse, 300 S.W.3d at 762; Jackson,
139 S.W.3d at 20.  

Even
if Appellant had offered the Galvan affidavit into evidence at the hearing, it
would have been inadmissible under Rule 606(b). 
That rule provides that, upon an inquiry into the validity of a jury’s
verdict, a juror may not testify as to any matter or statement occurring during
the jury’s deliberations or to the effect of anything on any juror’s mind or
emotions or mental processes as influencing any juror’s assent to or dissent
from the jury’s verdict.  Tex.R.Evid. 606(b).  A juror may, however, testify to “whether any
outside influence was improperly brought to bear upon any juror[.]”  Tex.R.Evid.
606(b); see also White v. State, 225
S.W.3d 571, 574-75 (Tex.Crim.App. 2007).  An outside influence is an influence from a
source other than the jurors.  White, 225 S.W.3d at 574.  Galvan’s affidavit did not address whether
outside influences were brought to bear upon any juror.  Consequently, the affidavit is inadmissible
and does not constitute competent evidence. 
The trial court did not abuse its discretion by failing to grant the
motion for new trial.

Inconsistent Verdicts

            Appellant also alleged in his motion
for new trial that the jury’s verdict that Appellant was guilty of sexual
assault (Count I) is inconsistent with its determination that Appellant was not
guilty of incest (Count II).  We
understand Appellant to argue that the evidence is insufficient to support his
conviction because the jury acquitted him of Count II, or alternatively, the
inconsistent verdicts show that there is jury misconduct.  Inconsistent verdicts in prosecutions based
on the same evidence do not require a reversal on the ground of legal
insufficiency.  Dunn v. United States, 284 U.S. 390, 393-94, 52 S.Ct. 189, 191, 76
L.Ed. 356 (1932); Thomas v. State,
352 S.W.3d 95, 101 (Tex.App.--Houston [14th Dist.] 2011, pet. ref’d); Jackson v. State, 3 S.W.3d 58, 61
(Tex.App.--Dallas 1999, no pet.).  Inconsistent
verdicts do not necessarily imply that the jury convicted the defendant on
insufficient evidence, but may simply stem from the jury’s desire to be lenient
or to execute its own brand of executive clemency. Thomas, 352 S.W.3d at 101; Jackson,
3 S.W.3d at 61.  Even where an inconsistent verdict might
have been the result of compromise or mistake, the verdict should not be upset
by appellate speculation or inquiry into such matters.  Jackson,
3 S.W.3d at 61-62, citing United States
v. Powell, 469 U.S. 57, 64-67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984).  Consequently, we are limited to determining
whether the evidence is sufficient to support the jury’s guilty verdict, a
matter we addressed in our review of Appellant’s first issue.  The trial court did not abuse its discretion
by failing to grant Appellant’s motion for new trial on the ground of
inconsistent verdicts.  Issue Three is
overruled. 

EXTRANEOUS OFFENSE EVIDENCE

            In Issue Four, Appellant asserts
that the trial court erred by admitting extraneous offense evidence during the
punishment phase because the witness “was hidden from Appellant until the time
of trial.”  Appellant’s ex-wife, Anna
Margarita Garcia, testified without objection that Appellant beat, sexually
assaulted, and threatened to kill her with a knife on June 9, 2006.  Garcia testified that, on March 13, 2007,
Appellant assaulted her and threatened to kill her while holding a knife to her
throat.  This assault resulted in
Appellant’s conviction of aggravated assault with a deadly weapon.  Garcia also testified, without objection,
that Appellant hit her every day of their thirteen years of marriage and often
forced himself on her sexually.  

To
preserve a complaint for appellate review, a party must have presented to the
trial court a timely request, objection, or motion that states the specific
grounds for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex.R.App.P. 33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691-92
(Tex.Crim.App. 2009); Moff v. State,
131 S.W.3d 485, 489 (Tex.Crim.App. 2004).  Appellant did not object to Garcia’s testimony
at trial on the ground that the extraneous offenses were inadmissible during
the punishment phase.  Consequently, the
arguments raised on appeal are waived.  See Bernal v. State, 74 S.W.3d 76, 78
(Tex.App.--Eastland 2002, pet. ref’d)(defendant did not preserve complaints
related to admission of extraneous offenses during punishment phase because he
failed to object).  Issue Four is
overruled.

CUMULATIVE ERROR

            In his final issue, Appellant argues
that his conviction should be reversed due to cumulative error.  We have rejected Appellant’s claims of error
raised in Issues One through Four.  The
Court of Criminal Appeals has recognized that a number of errors may be found
harmful in their cumulative effect, but there is no authority holding that
non-errors may in their cumulative effect cause error.  Chamberlain
v. State, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999).  We overrule Issue Five and affirm the judgment
of the trial court.

 

 

September 19, 2012                            ________________________________________________

ANN CRAWFORD McCLURE,
Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)