In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-22-00116-CR**

**CARLOS DAVID RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 19-04-05648-CR**

## MEMORANDUM OPINION

Carlos David Rodriguez appeals his conviction for aggravated sexual assault of a child, J.G. (Jane).[1] *See* Tex. Penal Code 22.021(a)(1)(B). Following a jury trial, Rodriguez was found guilty of aggravated sexual assault of a child and sentenced to

---

[1] We refer to the victim and her family members by pseudonyms to conceal their identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

1

twenty years imprisonment within the Texas Department of Criminal Justice. In seven issues on appeal, Rodriguez complains about the sufficiency of the evidence to support his conviction, including alleging a material variance in the indictment and evidence at trial; limitation of his voir dire; exclusion of evidence of the victim's prior extraneous allegations against another person; improper comments during closing argument; prosecutorial misconduct; and ineffective assistance of counsel. For the reasons explained below, we affirm the trial court's judgment.

## BACKGROUND

Rodriguez is Jane's stepfather and biological father of Jane's two younger siblings. Norma Carmona testified that she works at Children's Safe Harbor, a Children's Advocacy Center. Carmona interviewed Jane in February 2019 when she was fourteen years old. She described Jane's demeanor during the interview as "tearful" stating that "[Jane] started off crying in the beginning of the interview and continued to cry as the interview went on to the end." Carmona detailed her process in interviewing Jane, determining that Jane knows the difference between the truth and a lie, and explained that Jane told her "I got raped." According to Carmona, Jane told her that she was raped by her stepfather when she was ten years old. Jane identified Rodriguez as her assailant, telling Carmona that Rodriguez anally penetrated her with his penis in her bedroom after picking her up from school. Jane described the assault as painful, and she stated that when she went to the bathroom

2

after the assault, she bled and experienced pain. Jane told Carmona that she was fearful of Rodriguez. During cross-examination, Carmona stated that Jane told her that when Rodriguez picked her up from school that day, she had received a failing report card in music.

Jane's paternal grandmother ("Grandmother") described Jane as her "little girl" and a happy child. In January 2019, Jane approached Grandmother, trembling and scared, and told Grandmother that Rodriguez raped her. The next day, Grandmother told Jane's mother ("Mother") about the abuse, and Mother took Jane to the police to make a report. Looking back, Grandmother stated that she noticed a change in Jane's demeanor, testifying that "she was not the same [Jane][,]" and that she was unhappy. She also testified that Jane regressed to bed wetting while Mother and Rodriguez were living together. According to Grandmother, Jane told her that she reported the abuse to the police, "but they did not believe her."

Mother testified that she has four children. She described her family's history, including her previous and current relationships, the family's previous residences, and Jane's schools. This oral history was compiled into a timeline and admitted by the State. Mother testified that Jane was a "very quiet . . . normal kid[]" growing up, helpful and did not cause trouble. Mother described Jane's and Rodriguez's relationship as "rough[,]" stating he was a strict disciplinarian to Jane. "We had a very rough relationship, and for some reason, he had -- I don't know -- something

3

towards [Jane] because he was different with her than my other child." According to Mother, Rodriguez had "problems" if Grandmother or Jane's biological father came by their house, so to avoid conflict she would not let Jane and her sister go to Grandmother's house. She denied that Grandmother tried to get custody of Jane. Looking back, Mother observed Jane's behavior change, including bed wetting. After Mother and Rodriguez separated, Jane did not talk about Rodriguez.

Mother testified that her oldest daughter told her about the assault the day after Jane told Grandmother. Mother was in "shock[,]" and Jane and Mother agreed to go to the police to report the abuse. Mother said it was difficult for Jane to talk about the assault because she was embarrassed, and it remains difficult for Jane to discuss it. Mother testified that after Jane's outcry, Jane exhibited a "relief . . . that now she told us[.]"

Jane, who was sixteen years old at the time of trial, testified she has three siblings. She testified about her living arrangements when Rodriguez and Mother were a couple, and that she remembered Rodriguez as being a disciplinarian in their home. Jane denied calling the police to report Rodriguez before her outcry. Jane testified she was "scared" when she told Grandmother about the sexual assault, because Rodriguez threatened to hurt her or Mother if she told anyone. Jane became concerned when her cousin, who had a boyfriend, told her she was going to visit her boyfriend. She believed that her cousin might be sexually assaulted by the boyfriend

4

like she was by Rodriguez. Jane decided to tell her Grandmother about being sexually assaulted by Rodriguez because she thought that Grandmother would intervene to help her cousin. According to Jane, she cried when she told Grandmother that Rodriguez raped her. After she told Grandmother and went to the police, she felt "good, like, that finally somebody knew." She testified it was "scary" and "difficult" to speak to Carmona at Safe Harbor, because it was the first time she spoke in detail about the assault.

Jane testified she was eight years old when Rodriguez assaulted her after he picked her and her younger sister up from elementary school. Rodriguez dropped her sister off at his mother's home before taking Jane home. According to Jane, Rodriguez was "mad" that afternoon because of her failing grades in school. Jane and Rodriguez were home alone, when Rodriguez entered Jane's bedroom, hit Jane with a shoe, and took off her shorts. Jane testified Rodriguez sexually assaulted her by touching his penis to her anus, causing her butt to "hurt[,]" and then he put his penis into her vagina. Jane denied Rodriguez put his penis into her anus. After the assault, Jane was sore, and had blood in her urine for about a week. Jane testified that Rodriguez stopped the sexual assault when someone knocked on the door. Jane did not tell Mother that night because of Rodriguez's threats. Jane identified Rodriguez as her assailant in court. During cross-examination, Jane agreed that she told someone nine months before the outcry that she was not sexually assaulted.

Sharon Record testified that she is a pediatric nurse practitioner and a Sexual Assault Nurse Examiner ("SANE") employed with the Division of Public Health Pediatrics at Texas Children's Hospital. She described both her educational and professional background and how to perform a SANE examination on a patient after an outcry of sexual assault. Record stated that she performed a SANE examination on Jane, who was thirteen years old. The medical records of Jane's examination were admitted at trial. According to Record, Jane told her that she was at the examination because "I got raped[.]" Jane described rape as "[a] guy's penis goes inside my vagina or butt." Jane told Record that Rodriguez had "put his penis into my butt[,]" when she was "around 10 [years old]." When asked if Rodriguez had "anything come out of his penis[,]" or if he put his "penis anywhere else than your butt[,]" Jane responded that she did not remember. Record testified that it may be difficult for an eight-year-old to distinguish if a penis went into their butt or vagina, as "[m]ost 8-year-olds would know what a butt is because they poop, right, but an 8-year-old may not know what a vagina really is." Jane told Record that after the assault she experienced pain "in my stomach and some in my vagina and my butt[,]" including bleeding when she urinated. Jane denied any other assaults by Rodriguez. Record testified that given the biological resiliency of female genitalia it was not uncommon to find no injuries with a delayed reporting of an assault. Record stated that although

6

she found no evidence of penetration during her exam, that does not mean Jane was not penetrated when she was younger.

Christi Balkovec testified that she works at Children's Safe Harbor as a clinical mental health professional. She described her educational and professional background and stated that she counseled Jane after her outcry in 2019 and treated her for eighteen sessions. During the sessions, Jane told Balkovec she experienced both sexual and physical assault and identified Rodriguez as her assailant. Balkovec testified that when Jane started her sessions, Jane "struggled with sharing feelings[,]" was "very shy, very quiet[,]" but "willing to participate[.]" According to Balkovec, Jane got more comfortable as her sessions continued, but it took "11[] or 12[] session[s]" for it to become easier for Jane to discuss the assault. Balkovec diagnosed Jane with posttraumatic stress disorder because Jane reported symptoms of sleep disturbances, ongoing headaches, hypervigilance and anxiety, including fears about her safety, flashbacks, intrusive memories, and aggression.

The defense called three witnesses including Rodriguez. Rodriguez denied sexually assaulting Jane and he said he was never alone with Jane in their home. He testified he spoke to the police without counsel when he first heard about the allegations. Rodriguez stated that he picked up Jane from school once "in a blue moon," and when he did, he took Jane and her sister to his mother's home. Evidence was admitted at trial showing Rodriguez had a prior conviction of misdemeanor

7

Class C Assault – family violence against Mother. Rodriguez stated that he and Mother separated in 2014. He said that he communicated with Jane after the separation, on "[w]eekends, preferably, when they would be at my mother's house." Rodriguez also admitted to disciplining Jane with a shoe but denied using a coat hanger or his hands. Rodriguez's mother testified she considers Jane her granddaughter, and she never observed Jane acting afraid of Rodriguez. Rodriguez's sister testified that she observed Rodriguez and Jane, who never appeared afraid of Rodriguez.

The jury found Rodriguez guilty and assessed his punishment at twenty years of incarceration in the Texas Department of Criminal Justice.

**ANALYSIS**

Sufficiency of the Evidence

We first address Rodriguez's fifth issue challenging the sufficiency of the evidence to support the verdict. Rodriguez argues that other than Jane's testimony of the assault and the testimony of those who she told about the assault, there is no physical evidence of the assault. He also points to Jane's conflicting testimony about her age when the assault occurred and the sequence of events surrounding the assault.

When there is a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational

factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010) (*citing Jackson v. Virginia*, 443 U.S. 307 (1979) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence)); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We look to all evidence in the record, including admissible and inadmissible evidence, and direct and circumstantial evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). The jury is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). Juries may draw multiple reasonable inferences from facts so long as each inference is supported by the evidence presented at trial. *Id*. Accordingly, we are required to defer to the jury's determinations of weight and credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899.

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means or causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (iv). "The testimony of a child victim alone is sufficient to support a conviction for aggravated sexual assault." *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd) (citing Tex. Code Crim. Proc. Ann. art.

9

38.07(a)); *Johnson v. State*, 419 S.W.3d 665, 671 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd.). A child victim's outcry statement alone can also be sufficient to support a conviction for aggravated sexual assault. *Johnson*, 419 S.W.3d at 671; *see also* Tex. Code Crim. Proc. Ann. art. 38.072 (Hearsay Statement of Certain Abuse Victims).

During Jane's testimony, she recalled her age, the school she attended, and that the incident occurred after Rodriguez picked her and her sibling up from school. Jane testified in detail about the assault, identifying the time of day, events leading to the assault, that it occurred in her bedroom, and that Rodriguez removed both their clothing. Jane testified Rodriguez touched his penis to her anus and inserted his penis into her vagina. She stated that she experienced physical pain from the assault and in the aftermath had blood in her urine for a week. Grandmother testified that in January 2019, Jane approached her trembling and scared and told her Rodriguez raped her.

Jane's testimony alone or Grandmother's testimony as the outcry witness alone was legally sufficient to support the jury's verdict of guilt beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899; *Johnson*, 419 S.W.3d at 671; *Tear*, 74 S.W.3d. at 560. The jury had the benefit of hearing testimony from Jane, Grandmother, and the SANE, and the jury could have considered their testimony to be consistent.

10

Although Rodriguez denied the allegations and other witnesses testified Jane was not fearful of Rodriguez, "[w]hen the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict." *See Tate*, 500 S.W.3d at 413. The weight to be given contradictory testimonial evidence is within the sole province of the jury because it turns on an evaluation of credibility and demeanor. *See Cain v. State*, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997); *see also, e.g., Reed v. State*, 991 S.W.2d 354, 360 (Tex. App.—Corpus Christi 1999, pet. ref'd) (concluding evidence was sufficient to support aggravated sexual assault of a child conviction based on victim's testimony even though the testimony was contradictory). As the factfinder, the jury was entitled to judge the credibility of each witness, and the jury could accept some portions of a witness's testimony while rejecting others. *See Hughes v. State*, 897 S.W.2d 285, 289-90 (Tex. Crim. App. 1994). In viewing all the evidence in the light most favorable to the verdict, we conclude the evidence is sufficient, and the jury was rationally justified in finding Rodriguez guilty beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 899. We overrule Rodriguez's fifth issue.

Material Variance in the Indictment

In issue six, Rodriguez argues that there is a fatal and material variance between the allegations in the indictment and the evidence presented at trial. According to Rodriguez, the amended indictment alleged that he "did then and there

11

intentionally or knowingly cause defendant's sexual organ to contact or penetrate[] the anus of [Jane], a child who was then and there younger than 14 years of age," but Jane testified Rodriguez penetrated her vagina and not her anus.

A "variance" occurs when there is a discrepancy between the allegations in the indictment and the proof at trial. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Texas courts routinely treat the issue of variance as a challenge to the legal sufficiency of the evidence. *Id*. at 247. Only a "material" variance, one that prejudices a defendant's substantial rights, will make the evidence insufficient. *Ramjattansingh v. State*, 548 S.W.3d 540, 547 (Tex. Crim. App. 2018). This circumstance occurs when the indictment, as written, (1) fails to inform the defendant of the charge against the defendant sufficiently to allow the defendant to prepare an adequate defense at trial, or (2) subjects the defendant to the risk of being prosecuted later for the same crime. *Id*. The Court of Criminal Appeals has recognized three categories of variance:

> 1. a statutory allegation that defines the offense; not subject to a materiality analysis, or, if it is, is always material; the hypothetically correct jury charge will always include the statutory allegations in the indictment;
>
> 2. a non-statutory allegation that is descriptive of an element of the offense that defines or helps define the allowable unit of prosecution; sometimes material; the hypothetically correct jury charge sometimes will include the non-statutory allegations in the indictment and sometimes will not;

12

3. a non-statutory allegation that has nothing to do with the allowable unit of prosecution; never material; the hypothetically correct jury charge will never include the non-statutory allegations in the indictment.

*Id*. (emphasis omitted). In a sufficiency review, courts tolerate variances if they are not so great that the proof at trial "shows an entirely different offense" than what was alleged in the charging instrument. *Id.*

The amended indictment alleged in addition to penetration, that Rodriguez intentionally or knowingly caused his sexual organ to contact or penetrate Jane's anus. A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the anus of a child to contact the sexual organ of another person, including the actor. Tex. Penal Code Ann. § 22.021(a)(1)(B)(iv). The record shows Jane testified Rodriguez sexually assaulted her by touching his penis to her anus, causing her butt to "hurt[,]" and putting his penis into her vagina. Based on this record, we conclude there is no variance between the allegations in the indictment and the proof at trial. *See Gollihar*, 46 S.W.3d at 246. We overrule issue six.

Limitation of Voir Dire

In issue seven, Rodriguez argues that the trial court erred when it limited his examination of potential jurors during voir dire. Rodriguez contends that the trial court erred by sustaining the State's objection to a question about reasonable doubt and guilt and innocence.

We review a trial court's limitation of voir dire for abuse of discretion. *Fuller v. State*, 363 S.W.3d 583, 585-86 (Tex. Crim. App. 2012). A trial court abuses its discretion by prohibiting a proper question about a proper area of inquiry. *Id*. at 585. A proper question seeks to discover a juror's views on an issue applicable to the case. *Id.* An improper question attempts to commit the juror to a particular verdict based on particular facts or one that is so vague or broad as to constitute a global fishing expedition. *Id*.

The following exchange occurred during voir dire.

[TRIAL DEFENSE ATTORNEY]: Beyond a reasonable doubt -- the State has a burden to prove my client is guilty beyond a reasonable doubt. Why not without all doubt? You would have to, like, see it in person or on video. It wouldn't be fair to the State. So, it's without all doubt. These are all the burden of proofs, some of them, that we have in our Sorters Mill. You can get different things through the evidence, but the at tippy-top, you see beyond a reasonable doubt. That's the highest burden we have in our Sorters Mill. So, the next -- the big one is preponderance of the evidence. That's in civil cases. I can take millions of dollars from you, all your money, if I prove more likely than not in my accusation. It's a little more complicated than that, but 51 percent to take away all of you[r] wealth, everything you have done. Clear and convincing evidence in order for the State to take away your parental rights. Above clear and convincing is beyond a reasonable doubt. That's because the State can take away your freedom. I know a lot of people might think your parental rights are more important than your freedom, but the State says that you have to prove beyond a reasonable doubt to take away liberties, our highest burden. So, what is beyond a reasonable doubt? That's hard to define. I can't define it, but what is -- so, you have two options. It's either guilty or not guilty. Guilty means beyond a reasonable doubt. Not guilty means not, right? Not guilty is the default. Not guilty doesn't mean my client is innocent. Not guilty doesn't mean you are calling the complainant a liar. Not guilty means you have a reasonable doubt, a hesitation to pull the lever

14

to convict. I like to think of the parking lot. When I leave the park garage and I'm walking towards the elevators and there's a nagging voice in my head, Did you lock the doors? Yes. I always lock the doors. I turn to my fiance, Did I lock the doors? Yes, Trevor. You always lock the doors. I turn and walk to the car and I hear the horn and Yes, I locked the doors. That was a reasonable doubt I had even though I was convinced I locked the doors. Reasonable doubt can be unanswered questions. It can be lack of evidence, conflicts in the evidence. Whatever it is, it's each and individual to all of you. You can all have different reasonable doubts in the jury box and still find the person not guilty. If I am convinced that the defendant is guilty of aggravated sexual assault of a child, but I have a reasonable doubt, then I will still find him guilty.

[…]

VENIREPERSON: Two -- can you repeat the question?

[TRIAL DEFENSE ATTORNEY]: Yes, sir. If I'm convinced the defendant is guilty of aggravated sexual assault of a child, but I have a reasonable doubt, then I will still find him guilty.

THE COURT: [Trial Defense Attorney,] this particular statement, not a question -- I believe "I am convinced" versus having a "reasonable doubt," they are contradicting to each other.

[TRIAL DEFENSE ATTORNEY]: The burden is clear and convinced.

THE COURT: That's not the standard you are using in this scenario. So, I will ask you to rephrase the question for purposes of this scaled question.

VENIREPERSON: Yeah, it's not making sense.

[TRIAL DEFENSE ATTORNEY]: So just to restart, if you are clearly and convinced -- if there's evidence that clearly convinces you that someone is guilty of aggravated assault, but you still have a reasonable doubt -- is that not fair?

VENIREPERSON: How can I have a reasonable doubt if --

15

[TRIAL DEFENSE ATTORNEY]: It's a higher standard than that. The lower is clear and convincing evidence.

VENIREPERSON: If you think they are guilty, they are guilty.

[TRIAL DEFENSE ATTORNEY]: That's not the way our Sorters Mill works unfortunately. Our Sorters Mill is set up for guilty people to be found not guilty. I mean, it's going to happen. Judge, if someone is convinced that the defendant is guilty, but have a reasonable doubt, they have to find him not guilty.

THE COURT: [Trial Defense Attorney], I think you are hearing back from the panel that they are confused as to the question, and I think in fairness to the panel of which you are asking this question, your intent as to -- what I hear is you are comparing the burdens; is that correct?

[TRIAL DEFENSE ATTORNEY]: Yes, Your Honor.

THE COURT: So, if you want to ask that question, feel free to do so, but as this question reads, you are hearing from this panel that they are confused as to the question.

[TRIAL DEFENSE ATTORNEY]: Yes, Your Honor. Just to clarify, I think that's because it's such a hard understanding of what beyond a reasonable doubt means, and I think that's hard for a person to grasp.

VENIREPERSON: You are making your client sound guilty.

[TRIAL DEFENSE ATTORNEY]: We have clear and convincing evidence as one burden of proof. What I'm trying to say is that is lower -- less than required here. We require a higher burden than that. We require that you be more than convinced by the evidence. I guess the convincing is the problem with the word, but that's just the word that we use, but I will move on.

VENIREPERSON: Can I take my answer back?

[TRIAL DEFENSE ATTORNEY]: So, what I will ask instead is if you thought -- if you believed that my client was guilty of this offense, but you still had a reasonable doubt, there was something that gave you,

16

Yes, I think he's guilty. I'm pretty sure he's guilty, but there's a reasonable doubt in my head that he's not guilty, how would you answer? Would you find him -- and you would still -- so --

[THE STATE]: Same objection.

THE COURT: What's the objection?

[THE STATE]: Objection is it's vague and confusing based on the reaction of the panel. Furthermore, it attempts to define beyond a reasonable doubt.

THE COURT: Sustained.

[TRIAL DEFENSE ATTORNEY]: Okay. So, what I'm trying to say to everyone is our standard -- people who are guilty are going to be found not guilty, right? There could be a preponderance of the evidence that they are guilty, but not beyond a reasonable doubt, and you will still find them not guilty because you have a reasonable doubt. That's our standard. All right? Benjamin Franklin believed that it is better for 100 guilty persons to go free in order to prevent one innocent person from being wrongfully convicted. That's why we have such a high standard. Guilty people are going to go free under this standard. Does anybody have a problem with that?

VENIREPERSON: I do due to the nature of this case. I don't believe that we should -- I don't think it's okay to let a guilty person go free in this case.

[TRIAL DEFENSE ATTORNEY]: Yes, Juror. Thank you. Juror 67 brings up a good point. Is anyone going to hold the State to a lesser burden -- make them not meet their burden beyond a reasonable doubt -- because of the nature of this case? Anyone else agree with 67?

VENIREPERSON: (Indicating.)

[TRIAL DEFENSE ATTORNEY]: Juror 2?

VENIREPERSON: Yes.

[TRIAL DEFENSE ATTORNEY]: Anyone else?

VENIREPERSON: (Indicating.)

[TRIAL DEFENSE ATTORNEY]: 68, 66 and 36 and 5 and 17. That's the big issue.

[THE STATE]: Judge, again, I object to that question because it's placing a definition on beyond a reasonable doubt and --

[TRIAL DEFENSE ATTORNEY]: There was no definition. I said a reasonable doubt. I didn't define what that means.

THE COURT: I sustain the objection and asking counsel to rephrase the question. I believe that the panel has an understanding that the standard applied in a criminal case is beyond a reasonable doubt and that if the State fails to meet proving all the elements beyond a reasonable doubt, that their verdict shall be not guilty. Are we on the same page as far as what the law says right now?

[TRIAL DEFENSE ATTORNEY]: That's the law.

THE COURT: And the panel, you-all have a -- what I have heard, you have a firm grasp of that. So, the question is -- what I'm hearing, and [Trial Defense Attorney], please feel free to correct me, but the question is: Are any of you changing the standard or lowering the burden for the State on this particular case? Is anyone changing it right now? If you say, I'm not going to hold the State to their burden, I'm going to lessen that burden, that's when your card needs to go up because that's what [Trial Defense Attorney] is asking.

[TRIAL DEFENSE ATTORNEY]: Because they are charged --

VENIREPERSON: (Indicating.)

THE COURT: No. 2.

[TRIAL DEFENSE ATTORNEY]: I want to make it clear because someone is charged with aggravated sexual assault of a child, you are going to hold the State -- you are going to require a lesser burden, you

18

won't make them prove to you beyond a reasonable doubt of all the elements? You will have a lesser burden for the State because of the nature of the case?

VENIREPERSON: (Indicating.)

[TRIAL DEFENSE ATTORNEY]: 67?
VENIREPERSON: No. I mean, if I believe beyond a reasonable doubt that they are guilty, then I'm going for that.

[TRIAL DEFENSE ATTORNEY]: But if they don't meet that burden, and you have a reasonable doubt, but you are pretty sure they are guilty, but it's not to the level of beyond a reasonable doubt, would you still find my client guilty?

VENIREPERSON: No, but I also don't really believe what Benjamin Franklin said. I will go against the others is what I'm saying.

In *Fuller*, the trial court prohibited defense counsel from asking the members of the jury panel if they understand that proof beyond a reasonable doubt is the highest burden and from explaining that "clear and convincing evidence is the type of burden that might be used when someone is committed to an involuntary health institution or when someone is trying to terminate someone's parental rights[,]" and that beyond a reasonable doubt is "higher than the preponderance of the evidence, which is just over 50 percent and that's the kind of burden that might be used in a civil lawsuit when someone is suing over money." *Id*. at 584. During voir dire in *Fuller*, defense counsel made no attempt to question the jury regarding the reasonable-doubt burden and lesser burdens. *Id.* Finding error by the trial court, the Court of Criminal Appeals held:

19

[I]nquiry into a prospective juror's understanding of what proof beyond a reasonable doubt means constitutes a proper question *regardless* of whether the law specifically defines that term. The jury's ability to apply the correct standard of proof remains an issue in every criminal case. If anything, the fact that current case law has come full circle and once again provides jurors with no definition of reasonable doubt only heightens the incentive for the parties to test the understanding of the veniremembers. And it strikes us as particularly apt to inquire whether a prospective juror understands that proof beyond a reasonable doubt must *at least* constitute a more onerous standard of proof than preponderance of the evidence and clear and convincing evidence. It is but the flip side of the inquiry that prosecutors engage in routinely during voir dire, designed to test whether prospective jurors will hold the State to the inappropriately onerous standard of proof beyond *all* doubt. While neither area of inquiry purports to assign a precise meaning to the term "reasonable doubt"–leaving that for the jurors themselves to supply, according to their own common-sense understanding of the words–they do serve to set the lawful parameters of reasonable doubt and thereby foster the selection of jurors who will not impose a standard of proof upon the State that they know for sure to be either too lenient (preponderance or even clear and convincing) or too burdensome (*all* doubt).

*Id*. at 587 (footnote omitted).

In this case, the trial court did not prohibit Rodriguez from inquiring into the panel's understanding of the beyond-a-reasonable-doubt burden of proof. While the trial court prohibited the parties from discussing the definitions of various burdens and requested that Rodriguez's counsel rephrase questions the jury found confusing, the record demonstrates that defense counsel advised the jury that beyond a reasonable doubt is the highest burden of proof and questioned the panel about the beyond a reasonable doubt burden and its meaning. This line of questioning allowed Rodriguez to test veniremembers' understanding of the beyond a reasonable doubt

20

standard and set the lawful parameters of beyond a reasonable doubt to promote the application of a proper burden of proof by the jury. *See id*; *see also Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012) ("A trial court retains discretion to restrict voir dire questions that are confusing, misleading, vague and broad, or are improper commitment questions."). Under the circumstances of this case, we conclude that the trial court did not abuse its discretion by limiting Rodriguez's voir dire questions. We overrule issue seven.

Exclusion of Evidence of Victim's Prior Extraneous Allegations

In his first issue, Rodriguez argues that the trial court abused its discretion and denied him his fundamental right to present a defense by excluding evidence of Jane's motivation to lie about the sexual abuse. Rodriguez argues the trial court erred by not allowing him to question Jane about a prior sexual allegation she reported to her school officials regarding her sister and Mother's new boyfriend.

We review a trial court's decision on the admission or exclusion of evidence for an abuse of discretion and must uphold the trial court's ruling if it was "within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "As long as the trial court's ruling is

within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009) (quoting *Montgomery*, 810 S.W.2d at 391). If the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. *Id*. at 344 (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982)).

Evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant. *See* Tex. R. Evid. 401. Rule 403 permits a trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. Rule 403 favors admitting relevant evidence and "carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State,* 329 S.W.3d 798, 806 (Tex. Crim. App. 2010) (citation omitted).

Rodriguez argues that by restricting his rights to conduct the cross-examination of Jane that he wanted, the trial court significantly undermined defense counsel's ability to prove Jane had motivations to lie about the sexual allegation, specifically that she wanted to stay at Grandmother's home where the house rules

22

were more relaxed. The record shows that defense counsel wanted to question Jane about a prior inconsistent statement she made where she told "certain people" nine months before the allegation that she had never been sexually assaulted. Defense counsel also wanted to question Jane about her statement that she missed school one day because her sister was raped by Mother's new boyfriend. The trial court noted that Rodriguez's questions concerned two issues, and the trial court allowed defense counsel to question Jane about her prior inconsistent statement, but not about a CPS allegation subject to a motion in limine or the rape allegation because it was a "different perpetrator or victim[.]"

The next day at trial, defense counsel made the following bill of exception regarding the CPS investigation that the trial court would not allow in for questioning:

> We wanted to enter evidence regarding a prior CPS allegation investigation that was in March 2018. It was said that [Jane], heard -- overheard that [her sister] was raped by [Mother's boyfriend], that's her mother's current boyfriend at the time. She made this allegation after missing school on Saturday and Monday. They asked her Tuesday why she missed school and gave this excuse or she made the allegation. This was not a true allegation. [Her sister] denied the allegation. They interviewed [Mother] and [Mother's boyfriend]. Both said they were just friends and didn't live together. [Ella], the other daughter, [Jane] and [Jane's sister], all said that [Mother's boyfriend] did live there. This could have led to a possible alternate suspect, [Mother's boyfriend]. During the timeline, it's possible [s]he was living with [Mother] and not Carlos Rodriguez.
>
> [Jane] the complainant, also denied three times, at least, that she was never sexually abused. She denied to the principal. She denied to the

CPS worker, Dan Wilber, and there's reason for us to believe she was interviewed by Safe Harbor and she denied being sexually abused there, as well.

The CPS report in [Jane's] interview also states inconsistent testimony that we weren't allowed to impeach on where she states that dad's house, they rarely get disciplined and that she's only allowed to stay there for two days so she doesn't get in trouble. This goes to motive and bias. The accusations of rape are false nine months prior, and it shows a motive to get out of [Mother]'s house and live in [Grandmother]'s house.

Furthermore, the CPS investigator, we are not able to get into the full depth of what she said in that prior interview. We are limited, in this case, to just what she told the counselor. In that CPS record, she says parts of the body that were not touched and goes much more into detailed. We are not able to impeach based on that. I think the face of the record allows us, under the cases that we cited earlier -- I think it was Vela -- to establish a public records exception to hearsay and get into Mr. Wilber's [CPS's] record that way. The Defense also subpoenaed Mr. Wilber and was going to call him to the stand in order to lay the predicate under business record, if necessary, or public record in order to get this in.

As noted above, the defense argument was that the defense wanted to show Jane's motivation and bias to make false allegations so she could live in Grandmother's home with relaxed rules. The record shows that the trial court allowed Rodriguez to question Jane about living at Grandmother's home and about Grandmother's rules. The trial court also allowed defense counsel to question Jane about whether she had denied any sexual abuse nine months before her outcry. Defense counsel challenged Jane's credibility throughout cross-examination, including challenging her prior inconsistent statements about the safety of Mother's

24

home. The record demonstrates the trial court allowed Rodriguez to develop evidence that Jane had reasons that might have led her to make a false outcry.

That said, the trial court did not allow defense counsel to cross-examine Jane about her outcry concerning her sister's rape by Mother's new boyfriend, which was made several years after Rodriguez moved out of Mother's home. When defense counsel approached the bench prior to questioning Jane regarding the previous allegation about her sister, including the CPS report subject to a motion in limine, the trial court stated that an accusation involving two other individuals was not relevant to the current allegations. Concerning defense counsel's Rule 403 objection, the trial court found that such evidence, which is not relevant, could possibly tend to confuse or distract the jury from the main issues, consume an inordinate amount of time, repeat evidence, or suggest a decision on an improper basis. We cannot say that the trial court abused its discretion by excluding the questions about an accusation involving two other individuals and by determining that the admission of such testimony would confuse the issues and mislead the jury. *See Wells*, 611 S.W.3d at 427; *De La Paz*, 279 S.W.3d at 343-44; *see also* Tex. R. Evid. 401, 403. We overrule issue one.

Improper Comments During Closing Arguments

In issue two, Rodriguez argues that the trial court improperly commented on the evidence during closing arguments. Rodriguez contends that the trial court erred

when it sustained the State's objection to his closing argument, "and, in doing so, improperly commented on the evidence."

Generally, a defendant must make a timely, specific objection to the trial court's comments or remarks or he forfeits his complaint on appeal. *See* Tex. R. App. P. 33.1(a)(1)(A); *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). Rodriguez did not object to the trial court's statement about the motion in limine during closing arguments. We conclude that Rodriguez failed to preserve this issue for our review. We overrule issue two.

Prosecutorial Misconduct

In issue three, Rodriguez argues that there were "cumulative instances of prosecutorial misconduct" that made his trial "fundamentally unfair." Rodriguez points to three instances of alleged prosecutorial misconduct by the State: objecting to the admission of Jane's report about her sister's rape; arguing during closing that Jane had no motive to lie and that defense's strategies did not pan out; objecting during closing about defense's argument being subject to a motion in limine. Although Rodriguez admits he did not object "to each instance[,]" he argues that the cumulative effect of the prosecutorial misconduct during the trial amounts to "deprivation of fundamental fairness and due process of law[.]"

"A due-process, fair-trial objection is required . . . to preserve a complaint on appeal that the prosecutor engaged in serious and continuing prosecutorial

misconduct so as to effectively deprive a defendant of due process or a fair trial." *Mullinax v. State*, No. 02-14-00237-CR, 2015 WL 3422531, *1 (Tex. App.—Fort Worth May 28, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Clark v. State*, 365 S.W.3d 333, 339-40 (Tex. Crim. App. 2012)); *see also Taylor v. State*, Nos. 09-16-00303-CR, 09-16-00307-CR, 2018 WL 2224126, **6-7 (Tex. App.—Beaumont May 16, 2018, pet. ref'd) (mem. op., not designated for publication). "The cumulative-error doctrine does not apply unless the complained-of errors have been preserved for appeal and are actually errors." *Schmidt v. State*, 612 S.W.3d 359, 372 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd) (citing *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999)). Since Rodriguez failed to preserve error regarding the three instances of alleged prosecutorial misconduct, we conclude there is no cumulative error or harm. *See Schmidt*, 612 S.W.3d at 372 (citing *Buntion v. State*, 482 S.W.3d 58, 79 (Tex. Crim. App. 2016)). We overrule issue three.

Ineffective Assistance of Counsel

In issue four, Rodriguez argues that he received ineffective assistance of counsel because his attorney failed to object to the State's inaccurate closing argument. Rodriguez contends that but for his trial attorney's deficiencies the outcome of his trial would have been different. He states that his trial attorney failed to object when the State said during closing arguments that no one ever said Jane

27

failed music class, despite Carmona testifying that Jane told her she failed music class before the assault. According to Rodriguez, this statement is essential to his defense as it highlights Jane's "inaccurate/inconsistent" statements, bolstering that her allegation against him was false. Rodriguez filed a motion for new trial alleging ineffective assistance of counsel and attached the affidavit of one of his trial attorneys.

To establish that he received ineffective assistance of counsel, Rodriguez must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). The party alleging ineffective assistance has the burden to develop facts and details necessary to support the claim. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). A party asserting an ineffective-assistance claim must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citations omitted). An appellant's failure to make either of the required showings defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

Before a defendant is entitled to a hearing on his motion for new trial alleging ineffective assistance of counsel, he "must allege sufficient facts from which a trial

court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of his trial would have been different." *Smith v. State*, 286 S.W.3d 333, 340-41 (Tex. Crim. App. 2009) (emphasis omitted). The reasonableness of counsel's choices generally involves facts that do not appear in the record, so the record will generally be insufficient to show that counsel's representation was so deficient as to meet the first prong of the *Strickland* test. *Id.* at 341 (quoting *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002)). Therefore, we must determine whether defendant's motion for new trial and supporting affidavit "allege facts that would reasonably show that his counsel's representation fell below the standard of professional norms and that there is a reasonable probability that, but for his counsel's conduct, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687).

In his motion for new trial, Rodriguez alleged that trial counsel was ineffective by failing to object to a false statement made by the State during closing arguments. Rodriguez's only support for his motion for new trial was a two-page affidavit verified by his trial attorney. "An affidavit attached to a motion for new trial is not evidence and it must be presented at a hearing on the motion and admitted into evidence to be considered on appeal." *See Broussard v. State*, No. 09-20-00259-CR, 2022 WL 2056388, at *5 (Tex. App.—Beaumont June 8, 2022, no pet.) (mem. op.,

not designated for publication); *see also Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009). With a silent record, we must presume that counsel's conduct falls within the wide range of reasonable representation. *See Strickland*, 466 U.S. at 689; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Broussard*, 2022 WL 2056388, at *6. There is also nothing in the record showing that trial counsel's actions were so outrageous that no competent attorney would have engaged in them. *See Strickland*, 466 U.S. at 687. We conclude Rodriguez failed to establish that the defense attorney's performance was deficient. We overrule issue four.

## CONCLUSION

Having overruled all of Rodriguez's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on January 30, 2024
Opinion Delivered July 31, 2024
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

30