

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1533-08

**JEFFREY ROUSE, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE THIRD COURT OF APPEALS
TRAVIS COUNTY**

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON, KEASLER and COCHRAN, JJ., joined. HOLCOMB, J., dissented.

### O P I N I O N

In this case, the court of appeals decided that appellant's "open" guilty plea to a second-degree-felony robbery offense was involuntary because of inaccurate advice of counsel[1] and also because the trial court impermissibly engaged in plea bargaining.[2] We will reverse.

---

[1] *See Ex parte Battle*, 817 S.W.2d 81, 83 (Tex.Cr.App. 1991) ("A defendant's election to plead guilty or nolo contendere when based upon erroneous advice of counsel is not done voluntarily and knowingly.").

[2] *See Ex parte Williams*, 704 S.W.2d 773, 777 n.6 (Tex.Cr.App. 1986) (trial judge should not

On February 6, 2002, an indictment was filed charging appellant with a second-degree-felony robbery offense with a punishment range of two to twenty years and a possible fine not to exceed $10,000.[3] The indictment also contained two enhancement paragraphs (paragraphs two and three) alleging three prior felony convictions that enhanced the punishment range to 25 to 99 years, or life. *See* TEX. PEN. CODE, § 12.42(d) (providing for punishment range of 25 to 99 years or life for most, including second-degree, felonies if it is shown "that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final").[4]

On May 1, 2002, appellant appeared in court with his retained counsel and made an "open"

---

participate in plea discussions or negotiations until an agreement has been reached between a defendant and the State); *Ex parte Shuflin*, 528 S.W.2d 610, 616-17 (Tex.Cr.App. 1975) (American Bar Association standards (not adopted in this State) that a trial judge should not participate in plea discussions "until tentative agreement has been reached" are meant "to avoid even the appearance of judicial coercion or prejudgment of the defendant by the court").

[3] *See* TEX. PEN. CODE, §§ 12.33, 29.02.

[4] The second paragraph of the indictment alleged that appellant had been convicted in Hays County of the felony offense of burglary of a habitation on September 23, 1988, "which conviction had become final before the commission of the offense alleged in the preceding paragraphs or counts[.]" The third paragraph of the indictment alleged that appellant had been convicted in Travis County of two felony offenses of burglary of a habitation (cause numbers 92,193 and 92,194) on June 24, 1988, "which convictions had become final before the commission of the offense alleged in the preceding paragraphs or counts." As to the third paragraph, the court of appeals stated:

> There were no allegations as to the priority of the two convictions, both occurring on the same date. There were no allegations as to sequence. *See* [§ 12.42(d)]. The State apparently believed that the indictment gave adequate notice to appellant and that it would prove the sequence required during trial in order to establish appellant as a habitual offender.

*See Rouse v. State*, No. 03-07-00214-CR, slip op. at 2 n.2 (Tex.App.–Austin, June 27, 2008) (not designated for publication).

plea of guilty to the second-degree-felony robbery offense. The trial court admonished appellant concerning the consequences of his plea including an admonishment that appellant was subject to the enhanced punishment range under Section 12.42(d). Appellant stated, among other things, that he understood that he was subject to this enhanced punishment range.

> [TRIAL COURT]: And you understand in addition to the second-degree felony that's been alleged against you, Mr. Rouse, in this cause that the State has also filed enhancement counts which would habitualize you where it would make it punishable by life in the penitentiary or by a term of years anywhere from 25 years to 99 years in the penitentiary or life in the penitentiary? Do you understand that?
>
> [APPELLANT]: Yes, sir.
>
> * * *
>
> [TRIAL COURT]: And so do you understand, Mr. Rouse–first of all, earlier on this morning I asked you how you wished to plead to the charge of robbery, and you entered a guilty plea, but you understand the State is not waiving enhancement counts and they still wish to go forward with the enhancement counts which would make you a habitual offender. Do you understand that?
>
> [APPELLANT]: Yes, sir.
>
> [TRIAL COURT]: So even though you pled guilty to the charge of robbery, which you had a right to do if you wanted to, you understand the punishment range is that second punishment range that I had described to you, which would be 25 years to 99 years in the penitentiary or life in the penitentiary in that situation. Do you understand that?
>
> [APPELLANT]: Yes, sir.
>
> [TRIAL COURT]: Okay. And knowing that, sir, knowing they are still proceeding with this as a habitual offender, as opposed to just a robbery, do you still wish to maintain your plea of guilty right now?
>
> [APPELLANT]: Yes, sir.

The trial court accepted appellant's guilty plea and found him guilty of the second-degree-felony robbery offense as alleged in the indictment. The trial court and the parties then proceeded to address the issue of punishment. The State indicated that there was no plea-bargain agreement,

but that it was offering appellant its recommendation of a 17-year sentence "even though it was habitual." The State also indicated that it would consider a counter-offer from appellant. Appellant personally addressed the trial court and explained that he had a drug problem and that he did not know "how this escalated into a robbery" when he meant to commit only a shoplifting.[5] Appellant's lawyer asked the trial court for probation and drug treatment at a drug-treatment center. The State responded that the last time that appellant "went down he got 15 years" and that it would "hate . . . to move backwards when someone commits subsequent criminal offenses." The trial court indicated that it needed "to think about this some more" and that it would decide appellant's punishment the next day.

The next day, May 2, 2002, the trial court offered appellant a ten-year prison sentence "pretty much in the nature of a plea bargain agreement" and stated that, if he did not accept this offer, then it would be necessary "to go forward with the enhancement counts." Appellant asked what "enhancement counts" meant, and the trial court explained them to him. Appellant did not accept the ten-year offer and informed the trial court that his lawyer told him that he would receive

---

[5]

Appellant testified at this hearing that, while in the course of committing theft of property with the intent to obtain and maintain control of the property, he caused bodily injury to a person by pushing her on and about her arms and torso and kicking her on and about her legs. His brief on direct appeal stated:

> Viewing the evidence in the light most favorable to the court's verdict the record reflects that on January 11, 2002, Selene Asura was in the Eckerd Drug Store at 3201 Bee Caves Road when she observed Appellant, Jeffery [sic] Rouse, shoplift a camera and perfume. She advised a clerk, Luis Martinez, who followed Appellant out of the store. Asura grabbed Appellant by the jacket and told him to return to the store and pay for the items. Appellant pulled away and kicked Asura on her right leg and knee. Asura screamed for help and Martinez called 911. Two bystanders held Appellant until the police arrived.

probation if appellant pled guilty. Appellant stated that this was the only reason he pled guilty. Appellant's lawyer denied telling appellant that he would get probation if he pled guilty and informed the trial court that he told appellant that probation was a "possibility" if appellant pled guilty. Appellant continued to insist that his lawyer told him that he would receive probation if appellant pled guilty. The trial court stated that it did not believe that. Appellant asked the trial court if he could "start over on this," and the trial court replied that he could not. The trial court sentenced appellant to a 12-year un-enhanced sentence to which the State did not object.

> [TRIAL COURT]: I have come up with a proposed solution on the matter that I've discussed with defense counsel and with the State this morning, and just pretty much in the nature of trying to dispose of the case to see whether it would be agreeable to both sides and proceed, I guess, almost in the nature of a plea bargain agreement to where we would do 10 years TDC instead of going forward with the enhancement provisions, and if we did that, if we did 10 TDC, as I mentioned, it would be pretty much in the nature of a plea bargain agreement, and if it wasn't an actual agreement by the State and the Defense, then it would be un-negotiated.
>
> * * *
>
> And you understand if we do it that way, that that would basically end the case. It would be 10 years TDC, and the Court would not proceed to the issues concerning the enhancement counts and that sort of thing. But if this settlement offer that I guess I'm making is not accepted, then if it's still going to be litigated or still fought over, then I guess we need to go forward with the enhancement counts.
>
> [APPELLANT]: What does that mean, enhancement counts?
>
> [TRIAL COURT]: The enhancement counts, the cases that make you a habitual criminal. It would make it a minimum of 25 to do. So, you know, whatever you-all want to do, it is okay with me. I am making that settlement offer in terms of this deal.
>
> * * *
>
> [APPELLANT]: If I don't take the 10 years, I don't have another chance at a new attorney? I want to get a new attorney. I don't have another chance at renegotiating this whole case down the line? It has to be 25 minimum?
>
> * * *
>
> Your Honor, he led me to believe that if I pled guilty yesterday that I would get probation. That is the only reason I got up there and said I was guilty.
>
> * * *

[TRIAL COURT]: Counselor, your client here has made the allegation that you told him if he pled guilty, he would get probation. Is that what you told him?

[APPELLANT'S LAWYER]: I told him that it was a possibility, Your Honor.

\* \* \*

[APPELLANT]: I'm sorry, sir, but he told me there would be no TDC time.

[TRIAL COURT]: I don't think that's true. I don't believe it.

[APPELLANT]: Did you say that, sir?

[APPELLANT'S LAWYER]: No, I did not.

[TRIAL COURT]: I'm sure he told you that it was a possibility you'd get probation.

[APPELLANT'S LAWYER]: In fact, this morning Your Honor, I went in and I said the other option that I felt was very likely was possibly SAFP[6] and some TDC time.

[APPELLANT]: No, you said SAFP, nine months.

[APPELLANT'S LAWYER]: Well, SAFP is a prison term and it has drug treatment with it. And I said I don't know what the Court is going to do. I have absolutely no idea.

[TRIAL COURT]: And he asked me about that, and I said that I would not do that.

[APPELLANT]: He did say that this morning.

[TRIAL COURT]: He said that was a possibility and everything. I told him this morning when he asked me about it that I would not do that.

[APPELLANT]: Well, what are my options? Don't I have a right to start over on this?

[TRIAL COURT]: No.

[APPELLANT]: Because I got up there and pled guilty?

[TRIAL COURT]: That's correct. The Court does not have to set this over again.

---

[6] SAFP is a substance-abuse felony punishment facility within the Texas Department of Criminal Justice.

\* \* \*

[TRIAL COURT]: Is there any reason you can state to the Court as to why you should not be sentenced right now?

[APPELLANT]: Because I was misled.

[TRIAL COURT]: I don't believe that's true.

\* \* \*

I am going to go ahead and sentence you at this time to 12 years TDC. I am not going to proceed on the enhancement counts. I'm still going to give you that break. We'll just proceed on it as a robbery. I've found you guilty of robbery. It is a second-degree felony. I am not going to proceed on the habitual counts.

On Monday, June 3, 2002, which was the last day that a notice of appeal or a motion for new trial could have been timely filed, appellant's lawyer faxed to the court coordinator an unsworn document entitled "Motion for Appeal."[7] This motion was filed with the district clerk the same day. This motion requested the trial court to allow appellant to withdraw his guilty plea because "[p]rior to the Court's sentencing, there was in both the attorney and the Defendant's mind, through communications made between he and his attorney, the belief that the Court would allow the Defendant to withdraw his pleading should the Court not provide a sentence acceptable to the Defendant outside the plea bargain [of a 17-year sentence] offered by the State." This motion alleged:

> The Court entered a judgment of sentence on May 3 [sic], 2002 for twelve years in the Texas Department of Corrections. Prior to the Court's sentencing, there was in both the attorney and the Defendant's mind, through communications made between he and his attorney, the belief that the Court would allow the Defendant to withdraw his pleading should the Court not provide a sentence acceptable to the Defendant outside the plea bargain offered by the State. The State had previously offered seventeen years and the Defendant, by and through his attorney, had elected to go to

---

7

The trial court imposed appellant's sentence on May 2, 2002. Appellant, therefore, had until Monday, June 3, 2002, to timely file a notice of appeal or a motion for new trial. *See* TEX. R. APP. PROC. 4.1(a), 21.4(a), 26.2(a).

the Court for sentencing outside the plea negotiation. The Defendant had been told by his attorney . . . that he would be permitted to withdraw his plea should the sentence provided to him by the Court not be acceptable to him.[8]

In fact, what happened on May the 3rd [sic] was that the Court, before sentencing was imposed, was asked by the attorney whether or not the Defendant would be entitled to withdraw his plea if the sentence was not acceptable. The Court at that time indicated that the plea could not be withdrawn and that the Court would not allow the Defendant to withdraw his plea. The Defendant entered the courtroom from the jail holding tank and before any opportunity took place to explain to the Defendant that he was not going to be permitted to withdraw his plea, the Defendant was asked whether there was any reason why sentence should not be imposed and answered that he knew of none.

WHEREFORE, the Defendant requests that the Court now permit him to withdraw his plea and to have the opportunity to have his case tried before the Court.

The trial court interpreted appellant's "Motion for Appeal" as a motion for new trial. The

record does not reflect that appellant ever requested a hearing on this motion, and the trial court did

---

[8]

The allegations in the "Motion for Appeal" are not clear on whether appellant's lawyer conveyed this advice before appellant pled guilty or after appellant pled guilty but prior to sentencing. The court of appeals' opinion states that appellant's lawyer "conveyed this advice to appellant prior to the guilty plea." *See Rouse*, slip op. at 13, footnote 15. The State, however, argues on discretionary review that appellant's guilty plea could not have been premised on this advice if appellant's lawyer "conveyed this information to [appellant] after he entered his plea, the following day when they reconvened for the judge to assess punishment." The State further argues that, in any event, "the record is incomplete at this stage." The State argues:

In this case, [appellant's] counsel has had no opportunity to explain the advice he gave [appellant] and what factors went into [appellant's] decision to enter his open plea. Even if trial counsel's statement [in the "Motion for Appeal"] is accepted as true, it does not necessarily imply that [appellant] entered his plea involuntarily. Counsel could have conveyed this information to [appellant] after he entered his plea, the following day when they reconvened for the judge to assess punishment. If this was the case, then [appellant's] entry of his open guilty plea, the previous day, could not have been premised on this misinformation. More importantly, at the hearing, [appellant's] repeated complaint was that he thought he would get probation, not that he could just withdraw his plea if he did not like the trial court's sentence. [Appellant] had no hesitation in accusing counsel of misleading him that he would get probation, and yet at no time did he accuse counsel of telling him that he could withdraw his plea. In either case, the record is incomplete at this stage.

not hold a hearing or make an express ruling on it. The motion was overruled by operation of law.[9] Appellant's lawyer failed to timely perfect an appeal from the trial court's judgment even though the trial court indicated that appellant had the right to appeal and appellant indicated his desire to appeal.

Appellant filed a *pro se* post-conviction application for writ of habeas corpus in January 2006, almost four years after the trial court sentenced him.[10] This application raised various claims including a claim that he was entitled to an out-of-time appeal.[11] This Court granted appellant habeas corpus relief in the form of an out-of-time appeal and dismissed his other claims without addressing their merits. *See Ex parte Rouse*, No. AP-75,551 (Tex.Cr.App., delivered November 15, 2006).

Following this decision, appellant filed an out-of-time motion for new trial in the trial court alleging that his guilty plea was involuntary because his lawyer "deceived" appellant into entering his guilty plea and "failed to properly advise [appellant] as to the law and facts applicable to this case." Though the record reflects that this motion was "presented" to the trial court, there was never any hearing or ruling on it, and it was overruled by operation of law.

Appellant timely perfected an out-of-time appeal to the court of appeals. Appellant claimed

---

[9]

*See* TEX. R. APP. PROC. 21.8(c).

[10]

This application asserted that he was on parole when he was arrested for the instant second-degree-felony robbery offense on January 11, 2002. It also asserted that appellant retained counsel "to represent him in the instant case, at the pending parole revocation, and in a pending Williamson County misdemeanor shoplifting case."

[11]

Appellant also claimed that his guilty plea was involuntary because his lawyer misled him into believing that he would get probation if appellant pled guilty. Appellant presented no claim that his guilty plea was involuntary because of the trial court's participation in plea negotiations or because of the allegations in the "Motion for Appeal."

in this out-of-time appeal that his guilty plea was involuntary (point one)[12] and that his lawyer was ineffective by misleading him into believing that he would get probation if appellant pled guilty (point two).[13] Appellant's involuntary-guilty-plea claim in his out-of-time appeal was not predicated on the trial court's participation in plea negotiations or on the allegations in the "Motion for Appeal."[14]

However, in disposing of appellant's first point of error, the court of appeals relied on the allegations in the "Motion for Appeal" and on the trial court's participation in plea negotiations to

---

[12]

In support of his involuntary-guilty-plea claim in point of error one, appellant argued in his brief on appeal:

> It is clear from this record that Appellant was never clear about the proper range of punishment and there seems to even have been serious confusion on the part of all parties as to the correct possible range of punishment if this case had proceeded to trial on the indictment as presented by the grand jury. The trial court again treated this as a possible habitual case under [§ 12.42(d)] when in fact at most this was a case enhanced under [§ 12.42(b)]. There is also a serious question as to exactly what advice was given to Appellant by his counsel as to the ultimate disposition of the case. In the present state of the record it can not be said that Appellant's plea of guilty was knowingly and voluntarily entered.

[13]

In support of his ineffective assistance of counsel claim in point of error two, appellant argued in his brief on appeal:

> Although outside the present record Appellant's counsel is aware of additional independent evidence to support Appellant's claims that he was repeatedly promised that in exchange for his fee of $10,000.00 Appellant would not be sentenced to prison but would receive probation and drug treatment.

[14]

Appellant also claimed in another point of error (point of error three) that the trial court erred in not holding a hearing on his out-of-time new trial motion after this Court granted appellant an out-of-time appeal. The court of appeals rejected this claim, and appellant did not petition this Court to review this decision. *See* TEX. R. APP. PROC. 68.2; *Rouse*, slip op. at 9 ("it is difficult to fault the trial court for lack of action because of the conclusory nature of the motion [for new trial] and affidavit").

decide that appellant's guilty plea was involuntary. In reaching this decision, the court of appeals

pointed to evidence in the record that could support a fact finding that appellant's guilty plea was

involuntary[15] and concluded:

> In the instant case, appellant's trial counsel, who had abandoned him on appeal, directly admitted in the "motion for appeal" that he had given appellant erroneous information about the withdrawal of the guilty plea, that appellant was of the belief that he could withdraw his plea at will, and that counsel never corrected the misinformation after counsel learned the contrary. Such significant misinformation was outside the competency of counsel in criminal cases. Further, the record confirms that appellant acted in accordance with such misinformation to his detriment. Additionally, the trial court engaged in plea bargaining with the implied threat of greater punishment if its plea bargain were rejected. When appellant rejected the plea bargain, apparently relying on counsel's misinformation, the trial court in sentencing, added two years to the plea offer. The record as a whole shows appellant's guilty plea was not freely, voluntarily, knowingly, and intelligently entered that [sic] appellant was not accorded due process and due course of law, which is the overriding concern.

*See Rouse*, slip op. at 19-20.[16]

We exercised our discretionary authority to review this decision. The grounds upon which

---

[15] *See Rouse*, slip op. at 13 (counsel confessed in the "Motion for Appeal" that **prior to the guilty plea** he conveyed erroneous advice to appellant that appellant "would be permitted to withdraw his [guilty] plea should the sentence provided to him by the court not be acceptable to him") (emphasis supplied) and at 14 ("Supporting counsel's assertion that he believed appellant could legally withdraw his guilty plea at will if the penalty assessed was unacceptable is the fact that counsel never entered into any plea bargaining discussion with the State" and a "number of appellant's personal remarks in open court during the plea proceedings support the fact that appellant had been given erroneous advice about the withdrawal of the guilty plea" while "[s]till other evidence clearly reflects appellant's lack of full understanding of what the plea connoted and the consequences thereof" and "[a]ppellant's remarks also indicated that he was unsure that his actions constituted robbery as a matter of law") and at 17 ("Some of the strongest evidence that appellant was given erroneous advice about plea withdrawal is the fact that appellant rejected the ten-year plea bargain offered by the trial court even in the face of an implied threat of finding appellant a habitual criminal.").

[16] The court of appeals sustained the first point of error and did "not reach the second point of error, alleging ineffective assistance of counsel." *See Rouse*, slip op. at 20.

we granted discretionary review are:

> May an appellate court, in deciding that a plea was entered involuntarily, rely on unsworn allegations made by trial counsel in a document that was faxed to the court coordinator, and later filed with the district clerk, when no fact-finder has evaluated that statement?

> When a defendant enters an open plea of guilty and the trial court, after admonishing the defendant, accepts the plea and finds the defendant guilty, does the trial court's subsequent offer of a non-negotiated sentence-settlement constitute *judicial coercion* or *judicial plea-bargaining* affecting the voluntariness of the defendant's guilty plea?

(Emphasis in original).

The State argues that the court of appeals erroneously relied on the "Motion for Appeal" in deciding that appellant's guilty plea was involuntary because this pleading was never introduced into evidence at any hearing for the trial court, as the fact-finder, to evaluate. The State claims that appellant's involuntary-guilty-plea claim is "prematurely addressed on direct appeal" and that this Court should reverse the court of appeals' decision so that a fact-finder may properly evaluate this claim on a more fully developed record in a habeas corpus proceeding.[17]

We decide that the court of appeals erred to rely on the allegations in the "Motion for Appeal" because post-trial motions such as these are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a hearing. *See Lamb v. State*, 680 S.W.2d 11, 13 (Tex.Cr.App. 1984); *see also McIntire v. State*, 698 S.W.2d 652,

---

[17] *See Cooper v. State*, 45 S.W.3d 77, 82 (Tex.Cr.App. 2001) ("[e]xperience has shown us that most cases of involuntary pleas result from circumstances that exist outside the [appellate] record, such as misunderstandings, erroneous information, impaired judgment, ineffective assistance of counsel, and plea-bargains that were not followed or turn out to be impossible of performance" and that meritorious claims of involuntary pleas may be raised by procedures other than direct appeal such as motion for new trial and habeas corpus which are superior to direct appeal "in that the claim may be supported by information from sources broader than the appellate record").

658 (Tex.Cr.App. 1985) (orig. op.) (affidavit may be sufficient to establish every facet of a cognizable ground for a new trial and accused may have such affidavit introduced into evidence and the "matter may be resolved exclusively on that basis" but "a *hearing* is required" in order to introduce the affidavit into evidence) (emphasis in original); *Jackson v. State*, 139 S.W.3d 7, 19-21 (Tex.App.–Fort Worth 2004, pet. ref'd).  This rule is based, in part, on permitting the non-moving party an opportunity to respond to these allegations before a conviction is reversed on their basis. *Cf. Hailey v. State*, 87 S.W.3d 119, 121-22 (Tex.Cr.App. 2002) (intermediate appellate court would violate ordinary notions of procedural default to reverse a trial court's decision on a theory not presented to the trial court); *Lamb*, 680 S.W.2d at 17 (Onion, P.J., concurring in part and dissenting in part) ("If the court had found merit in the contention by reviewing the affidavits, would this court have been justified in reversing without there having been a hearing on the motion for new trial and without the State being heard?").

We also disagree with any suggestion in the majority opinion in *Lamb* that this rule does not apply to new trial motions that "implicate[] federal constitutional issues."  *See Lamb*, 680 S.W.2d at 13 (reviewing "in the interest of justice" allegations in motion for new trial and supporting affidavit that were never introduced into evidence at a hearing) and at 17 (Onion, P.J., concurring in part and dissenting in part) ("I concur in the result reached.  I dissent vigorously to the action of this court in disposing of ground of error number one by considering affidavits, etc., which were not properly before the trial court.  It makes no difference whether the issue is a federal constitutional issue or a state constitutional issue or whatever.  If the court had found merit in the contention by reviewing the affidavits, would this court have been justified in reversing without there having been a hearing on the motion for new trial and without the State being heard?  This departure from

established procedure is wrong. The fact that the case carries the death penalty should not authorize departure. Will we hear again about what this court does today?").

In addition, we do not see how any "plea-bargaining" by the trial court concerning appellant's punishment could have influenced appellant's decision to enter an "open" plea of guilty the day before.[18]

The judgment of the court of appeals is reversed, and the case is remanded there for further proceedings not inconsistent with this opinion.

Hervey, J.

Delivered: December 9, 2009
Publish

---

[18]

The State argues:

The trial court's actions, in trying to come to a sentence-agreement [sic], did not coerce [appellant's] entry of his open guilty plea. [Appellant] made his plea the previous day after repeated admonishments by the trial court. [Appellant] acknowledged that his plea was un-negotiated and that no agreement had been reached with the State, thus leaving the punishment up to the judge. Any subsequent actions by the trial court did not invalidate the entry of the plea.