**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00328-CR**
**NO. 09-23-00340-CR**
**NO. 09-23-00341-CR**

_____

**MICHAEL BEE HODGE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause Nos. CR23-0359, CR23-0362, and CR23-0363**

_____

**MEMORANDUM OPINION**

Appellant Michael Bee Hodge appeals his convictions in trial cause number CR23-0359 for evading arrest or detention with a vehicle, trial cause number CR23-0363 for aggravated assault of a public servant, and trial cause number CR23-0362 for possession of a controlled substance. *See* Tex. Penal Code Ann. §§

22.02(b)(2)(B), 38.04(a), (b)(2)(A);[1] Tex. Health & Safety Code Ann. § 481.115(b). In three separate briefs, Hodge complains about the sufficiency of the evidence concerning identity, the State's alleged *Brady* violation for failing to disclose evidence, and harm due to lost portions of the punishment record. In this consolidated opinion, we affirm the trial court's judgments which resulted from two separate jury trials.

## BACKGROUND

### First Jury Trial

A grand jury indicted Hodge for evading arrest with a vehicle, a third-degree felony. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A). The indictment alleged that on or about April 22, 2023, Hodge "did then and there intentionally flee from Chris Simmons, a person the Defendant knew was a peace officer who was attempting to lawfully arrest or detain the Defendant, and the Defendant used a motor vehicle while he was in flight[.]" The indictment included a Habitual Offender Notice

---

[1] We note that the Legislature enacted two different versions of section 38.04(b) in 2011 and that an offense is a third-degree felony if an offender used a vehicle to evade arrest, regardless of whether he has a prior conviction for evading. *See Copeland v. State*, No. 09-19-00194-CR, 2020 WL 1280194, at *3 (Tex. App.—Beaumont Mar. 18, 2020, no pet.) (mem. op., not designated for publication); *see also* Act of May 27, 2011, 82nd Leg., R.S., ch. 920, § 3, 2011 Tex. Sess. Law Serv. 2320, 2321; Act of May 24, 2011, 82nd Leg., R.S., ch. 839, § 4, 2011 Tex. Sess. Law Serv. 2110, 2111; Act of May 23, 2011, 82nd Leg., R.S., ch. 391, § 1, 2011 Tex. Sess. Law Serv. 1046, 1046 (current version at Tex. Penal Code Ann. § 38.04).

alleging Hodge had two prior felony convictions. *See id.* § 12.42(a) (providing enhanced punishment for habitual offenders).

During the jury trial, Detective Chris Simmons ("Simmons") with the Livingston Police Department, testified that he was about to go on general patrol on April 22, 2023, when he heard "dispatch call for a flock hit," and he explained that their flock hit system is a camera system set up around town that reads license plates and reports the location of stolen cars. Simmons testified that after the flock hit detected a purple Harley Davidson motorcycle, he drove to the location, encountered the stolen motorcycle, and verified the license plate. The jury viewed video from Simmons's dash camera during his testimony, and Simmons explained that after he turned on his lights and "bumped" his siren, the motorcycle driver pulled over to the side of the road but then took off when Simmons stepped out of his marked patrol unit wearing his police uniform. Simmons identified Hodge as the motorcycle driver and testified that Hodge looked at him as Hodge "takes off."

Simmons explained that his siren and lights were activated as he pursued Hodge, who ran stop signs and went down a steep embankment to travel along the railroad tracks. Simmons testified that he followed Hodge on foot, advised other officers of Hodge's location, and returned to his unit and continued his pursuit. Simmons testified that Hodge fled while Simmons was trying to lawfully detain him for possessing a stolen motorcycle. Simmons explained that he continued to search

3

for Hodge, who wrecked the motorcycle and fled on foot, and he observed Hodge, who had lost his hat and mask, running through lots and "stripping off his jacket." After locating Hodge in a wooded area, Simmons continued his pursuit with his gun drawn and arrested Hodge, whom he recognized.

While the record shows that when asked on direct if there was any doubt that Hodge is the actual person, Simmons stated "Yes, 100 percent[,]" based on Simmons's entire testimony, it appears Simmons misunderstood the question. The video from Simmons's dash and body cameras support Simmons's testimony that Hodge evaded arrest or detention with a vehicle. Simmons explained that although Hodge's hair color had changed, that did not affect his identification of Hodge, who Simmons testified "still ha[d] the same face."

On cross-examination, when asked if he could "definitively tell this jury, that the person who got off the motorcycle is the same person sitting here in the courtroom today," Simmons stated, "I can." Simmons agreed that there were points during the pursuit where he lost sight of the motorcycle driver, but he testified that he knew that the motorcycle driver and the person he arrested were the same person.

Officer Chad Lilly ("Lilly") with the Livingston Police Department testified that on April 22, 2023, he was on patrol when he heard a flock hit over the radio. Lilly explained that after learning the motorcycle failed to stop for Simmons, he continued his pursuit with his lights and siren activated. After Lilly observed the

motorcycle wreck into the ditch and the driver flee on foot, Lilly followed the driver and searched under homes. Lilly found a hat and jacket, which appeared to be the same one the driver was wearing, just off the roadway. Lilly guarded the jacket, did not touch it, and turned it over to a detective, who took it into evidence, and he did not know whether anything was found in the jacket. Lilly was unable to identify the driver. Lilly's dash cam video, which was admitted into evidence and played to the jury, supports Lilly's testimony.

Detective Kaleb Barker ("Barker") with the Livingston Police Department testified that he investigated the case and recovered the leather jacket Lilly located at the scene. Barker testified that the jacket was found in the woods a couple of hundred feet from where the motorcycle crashed and approximately two and a half blocks from where Hodge was taken into custody. Barker explained that he inventoried the jacket that they believed belonged to Hodge and found an abandoned cell phone inside a pocket. Barker testified that he opened the home screen on the cell phone, which was unlocked, and located the name "Michael Hodge." Barker did not see who discarded the jacket or know whether the jacket belonged to the person on the motorcycle, but he testified that the other officers involved stated Hodge was wearing the jacket during the pursuit.

The State recalled Simmons, who explained that while he was pursuing Hodge in his patrol unit, he saw Hodge run through the field and strip off the jacket, but he

5

did not find the jacket at the scene. Simmons examined the jacket that had been admitted into evidence at trial and testified that he recognized the jacket and that it was the same jacket the motorcycle driver was wearing. Simmons also testified regarding two still shots from his dash cam video that were taken as Hodge was fleeing, and he explained they showed Hodge on the motorcycle wearing his jacket.

Roggan Stanzel ("Stanzel"), a Texas Ranger with the Texas Department of Public Safety, testified that he investigated Hodge's case. Stanzel testified that he interviewed Hodge, who waived his *Miranda* rights and admitted that he evaded arrest from the police on a motorcycle because he did not have a motorcycle license.

The jury found Hodge guilty of evading arrest or detention with a vehicle. During the punishment phase of the trial, the jury found the accusations of two prior convictions in the indictment to be true, assessed Hodge's punishment as a habitual offender at seventy-five years of confinement, and assessed a $10,000 fine.

Hodge filed a Motion for New Trial, arguing there is insufficient evidence that he is the same person the police chased and later arrested; evidence tending to establish his innocence–brass knuckles found in the jacket–has been intentionally destroyed or withheld due to the police failing to inventory the property. Hodge attached the affidavits of the deputy court clerk for the 258th and 411th Judicial District Courts and the court reporter for Judge Kitchens of the 258th Judicial District Court. In his Motion, Hodge argued the police failed to properly inventory

6

the evidence and that after the trial ended, the trial court's deputy court clerk and court reporter discovered the "hidden weapon[,]" which he claims shows that he is not the same person the police initially chased. In her affidavit, Katey Nelson ("Nelson"), the deputy court clerk for the 258th and 411th Judicial District Courts, stated that after the trial, the court reporter came to the office and took photographs of the jacket in lieu of checking out the exhibit, and when the court reporter placed the jacket back into the bag, Nelson heard a "loud thud." Nelson stated that when she looked into the bag, she found a set of brass knuckles, which the court reporter photographed. The court reporter, Michelle Kipina ("Kipina"), stated in her affidavit that when she pulled the leather jacket out of the evidence bag "something fell out." Kipina explained that she looked "in the bag and it was a brass knuckle." Kipina also stated that "[t]here may be something else in one of the pockets – looked like a tissue/napkin type of material." Although the clerk's record shows the trial court set the Motion for New Trial for a hearing, there is no reporter's record or other indication that the trial court conducted a hearing or ruled on the Motion.

Second Jury Trial

A grand jury indicted Hodge for the offense of possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(b). The indictment alleged that on or about April 22, 2023, Hodge "did then and there intentionally or knowingly possess a controlled substance, to wit: METHAMPHETAMINE in an

7

amount by aggregate weight, including any adulterants and dilutants, of less than one gram[.]" The indictment included a Habitual Offender Notice alleging Hodge had two prior felony convictions. *See* Tex. Penal Code Ann. § 12.42(a).

A grand jury also indicted Hodge for aggravated assault against a public servant. *See* Tex. Penal Code Ann. § 22.02(b)(2)(B). The indictment alleged that Hodge

> did then and there intentionally, knowingly, or recklessly threaten to cause serious bodily injury to Chris Simmons by threatening Chris Simmons by displaying a gun, and the Defendant did then and there know that the said Chris Simmons was a public servant, to-wit: Livingston Police Officer, in the lawful discharge of an official duty of attempting to detain Defendant[.]"

The State filed a Notice of Enhancement and Habitualization, alleging Hodge had two prior felony convictions. *See id.* § 12.42(a). The State filed a Motion to Consolidate Cases, which the trial court granted and ordered the cases be consolidated into one criminal action and tried in a single trial.

During the jury trial, Detective Simmons testified that on April 22, 2023, he had probable cause when he attempted to stop Hodge, who was driving a motorcycle, to question him about the ownership of the motorcycle. Simmons testified that Hodge pulled over when he activated his lights and "bumped" his siren, but then took off when Simmons stepped out of his marked patrol unit wearing his patrol uniform. Simmons explained that he and other officers pursued Hodge, who eventually crashed the motorcycle and fled on foot. At one point, Simmons observed

8

Hodge running through a yard and stripping off his jacket. Simmons testified that when he found Hodge hiding behind a truck, he warned him that he did not want to use deadly force because "[s]omebody had told me something."

Simmons explained that he was concerned Hodge had a gun, because he observed Hodge "reaching down to his boot[]" and "pulling a gun out." Simmons testified that he saw Hodge "pull the gun from his pants leg[]" and "[s]witch it to his right hand." At that point, Simmons explained he believed Hodge was "reaching for a gun[,]" and when Simmons saw Hodge switch the gun to his right hand and point it at him, Simmons drew his firearm, fired four rounds at Hodge, and "stopped the threat." Simmons testified that when he was shooting, Hodge "still had his weapon in my direction." Simmons explained that when he saw Hodge's "weapon coming out, I was in fear for my safety, my fellow partner safety, and anybody in the area[,]" and he believed Hodge was going to shoot him. Simmons believed he had "no other option other than to use deadly force." Simmons testified that Hodge's weapon had a live round in the chamber and a fully loaded magazine.

On cross-examination, Simmons testified that when he saw Hodge make a furtive gesture, he shot Hodge with his taser, and Hodge pulled the leads out. Simmons explained that he shot Hodge with his gun "as soon as he puts [the weapon] in his right hand[]" and before Hodge pointed the weapon at him. When asked about his prior testimony that he shot Hodge because he was pointing the weapon at him,

Simmons stated "[a]nd it will be." Simmons testified that when Hodge transferred the weapon to his right hand, "he had the opportunity to drop the weapon at that point, and did not." The videos from Simmons's dash and body cameras support Simmons's testimony.

Officer Lilly testified that he was on routine patrol when he heard Simmons was involved in a pursuit, so he assisted in the search. Lilly testified that he saw Hodge drop the motorcycle in a ditch and flee on foot. Lilly explained that after he heard Simmons discharge his weapon, he went to the scene, searched the wooded area, and found Hodge's jacket that Simmons reported he had taken off, along with a ball cap and one glove. Lilly testified that he called Detective Barker to the scene to collect the evidence.

Barker testified that he photographed the scene and assisted in collecting the evidence from the scene, including Hodge's pistol, magazine, ammunition, discarded jacket, glove, and baseball cap. Barker explained that Lilly directed him to where he found the jacket in the woods near the scene. Barker testified that when he checked the jacket's pockets, he found a bag containing a "clearish white crystal-like substance[]" that he believed to be methamphetamine. Barker explained that he collected the narcotics into evidence, and the evidence technician sent it to the crime lab. Barker also found a cell phone in the jacket, and he observed the name "Micheal Hodge[]" in the cell phone.

10

Billie Henderson Gardner ("Gardner") testified that on April 22, 2023, there was an altercation in her driveway, and she observed a gentleman "ducking in-between vehicles[]" and "the law was coming around the other side of the vehicle, they were kind of going back and forth." Gardner identified Hodge as the man she saw in her yard. Gardner explained that Hodge asked her daughter and son-in-law for help, and when her son-in-law told him to "keep going[,]" Hodge disappeared and then returned and was "ducking in-between" the trucks. Gardner testified that when an officer came, she observed Hodge reach inside his pocket or groin area and pull out a clip and then reach down into his boot and "pull out something." At that point, Gardner testified that she yelled to her kids to "get in the house. He has a gun." Gardner explained that she did not see the actual gun, but she saw the clip and Hodge "[l]oading it." Gardner testified that when the officers were circling in front of the vehicle and "kind of playing chase[,]" she told the officer Hodge had a gun.

On cross-examination, Gardner testified she had a Vivint camera on the front door of her house that recorded the incident in her front yard, and she also recorded the incident with her cell phone. Gardner testified that the police collected both video recordings, and defense counsel played the recordings for the jury. Gardner explained that she only saw Hodge pull a clip out of his groin or pocket area and that he "appeared to be taking something out of his boot area[,]" but she did not know if it was a gun.

11

Ranger Stanzel testified that he assisted with the police use of force investigation, which is generally done in cases with officer-involved shootings, and he determined that Simmons's use of force was lawful, justified, and necessary. Stanzel identified Hodge as the person who threatened Simmons with a gun, and he explained that he believed Simmons feared for both his own life and other innocents and law enforcement who were present. Stanzel testified that during his investigation, he interviewed Hodge and determined Hodge's actions were unlawful and a threat to cause serious bodily injury or death.

Tayfun Sahin ("Sahin"), a forensic scientist who works with the Department of Public Safety at the Houston Regional Crime Lab, testified that in this case, he performed screening tests and determined the unknown substance was methamphetamine. Sahin testified that the methamphetamine weighted .72 grams.

Nicole Groshon ("Groshon"), a firearm and toolmark examiner with the Texas Department of Public Safety, testified that she tested State's exhibit 58, which is Hodge's pistol Barker collected from the scene, and determined it was functional.

After the trial court denied defense counsel's motion for directed verdict in both cases, the jury found Hodge guilty of the offenses of possession of a controlled substance and aggravated assault against a public servant. During the punishment phase of the trial, the jury found the accusations of two prior convictions to be true in both cases. For the offense of possession of a controlled substance case, the jury

12

assessed Hodge's punishment at twenty years of confinement. For aggravated assault against a public servant, the jury assessed Hodge's punishment at life in prison.

In each case, Hodge filed the same Motion for New Trial he filed in the first trial, alleging he was entitled to a new trial because the evidence was insufficient to establish his identity as the same person the police pursued at the beginning of the chase and that the State intentionally destroyed or withheld evidence–the set of brass knuckles–which tended to establish his innocence. Hodge attached Nelson's and Kipina's affidavits explaining how they discovered the brass knuckles after the trial. As in the first trial, there is no reporter's record on the Motion for New Trial, but in both clerk's records there is an Order Setting Hearing and an entry on the trial court's docket sheet noting that Hodge's attorney was present on December 12, 2023, for the Motion for New Trial and the court reporter's name and initials are also noted on the docket. Since the clerk's record does not indicate the trial court ruled on the Motions for New Trial, they were overruled by operation of law.

## ANALYSIS

### First Trial - Evading Arrest or Detention with a Vehicle

*Sufficiency of the Evidence*

In issue one, Hodge complains there was insufficient evidence identifying him as the man Simmons chased on the motorcycle. Hodge argues there is no evidence

13

that he is the man who fled from Simmons on the motorcycle. Hodge argues that during the pursuit, Simmons lost track of the man he was chasing on the motorcycle, and when Hodge was shot, he was not riding a motorcycle or wearing the same hat, mask, sunglasses, and jacket as the motorcyclist.

In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the ultimate authority on the credibility of the witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). An appellate court may not sit as a thirteenth juror and substitute its judgment for that of the factfinder by re-evaluating the weight and credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13 (citation omitted). If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *See Brooks*, 323 S.W.3d at 899

14

n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper*, 214 S.W.3d at 16-17. We treat direct and circumstantial evidence equally. *Clayton*, 235 S.W.3d at 778.

Under section 38.04 of the Texas Penal Code, a person commits the offense of evading arrest or detention with a vehicle, a third-degree felony, if the actor intentionally flees from a person he knows is a peace officer who is attempting to lawfully arrest or detain him and the actor uses a vehicle while in flight, regardless of whether he has been previously convicted under this section. *See* Tex. Penal Code Ann. § 38.04(a), (b)(2)(A); *Copeland v. State*, No. 09-19-00194-CR, 2020 WL 1280194, at *3 (Tex. App.—Beaumont Mar. 18, 2020, no pet.) (mem. op., not designated for publication). The identification of the defendant as the person who committed the charged offense is part of the State's burden of proof. *Miller v. State*, 667 S.W.2d 773, 775 (Tex. Crim. App. 1984). When the defendant contests the identity element of the offense, we note that the State may prove the defendant's identity by either direct or circumstantial evidence or inferences. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) (citation omitted); *Wiggins v. State*, 255 S.W.3d 766, 771 (Tex. App.—Texarkana 2008, no pet.); *Clark v. State*, 47 S.W.3d 211, 214-15 (Tex. App.—Beaumont 2001, no pet.). A direct in-court

identification is the preferred procedure for identification, and the test for sufficiency is whether we can conclude from a totality of the circumstance whether the jury was adequately apprised that the witness was referring to the defendant. *See Wiggins*, 255 S.W.3d at 771. The testimony of a single eyewitness alone can support a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Any discrepancies concerning the defendant's clothing or appearance go to the weight and credibility of the witness. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

During trial, Simmons identified Hodge as the motorcycle driver who fled while he was trying to lawfully detain him for possessing a stolen motorcycle. Simmons explained that after the motorcycle driver wrecked and fled on foot, he observed the motorcycle driver had lost his hat and mask and was running and "stripping off his jacket." Simmons admitted that there were times during the pursuit when he lost sight of the motorcycle driver, but he testified that he knew Hodge was the motorcycle driver because he recognized Hodge when he arrested him. Additionally, the jury viewed the video recordings from Simmons's dash and body cameras as well as a still picture taken from his body camera and could compare the person in the recordings and picture with the person in the courtroom and decide if he was the same person. Simmons explained that his identification was not affected by the change of Hodge's hair color because Hodge "still ha[d] the same face."

16

Detective Barker testified that Hodge's name was in the cell phone that he found in the discarded jacket that was located a couple of hundred feet from the crash site and approximately two and a half blocks from where Hodge was apprehended. Simmons examined the jacket at trial and explained that it was the same jacket the motorcycle driver was wearing. The jury viewed two still shots from Simmons's dash cam video showing the motorcycle driver wearing a jacket. The jury also heard Ranger Stanzel testify that during his interview, Hodge admitted he evaded arrest from the police on his motorcycle because he did not have a motorcycle license.

Based on this record, we conclude the evidence is sufficient to prove Hodge was the man who evaded arrest or detention from Simmons with a vehicle. We overrule issue one.

*Brady Violation*

In issue two, Hodge argues that after the trial ended, the State failed to disclose it found a set of brass knuckles in the jacket the State alleged Hodge was wearing during the police chase. The State contends that Hodge failed to cite any evidence in the record to support his *Brady* violation claim. *See Brady v. Maryland*, 373 U.S. 83 (1963).

The State has the duty to disclose "any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the

17

punishment for the offense charged." Tex. Code Crim. Proc. Ann. art. 39.14(h). A *Brady* violation occurs when the State willfully or inadvertently suppresses evidence that is favorable to the defendant. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006); *Hanks v. State*, No. 09-23-00132-CR, 2024 WL 4142839, at *16 (Tex. App.—Beaumont Sept. 11, 2024, pet ref'd) (mem. op.). The State's *Brady* obligation "'does not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist.'" *State v. Heath*, 696 S.W.3d 677, 699 (Tex. Crim. App. 2024) (citation omitted); *Hanks*, 2024 WL 4142839, at *16. That said, for *Brady* purposes, the State, which includes the prosecutor and members of law enforcement, is not relieved of its duty to disclose even if the prosecutor was not personally aware the evidence existed. *Harm*, 183 S.W.3d at 406-07.

The record shows that Hodge's Motion for New Trial included affidavits from the trial court's deputy court clerk and court reporter, but those affidavits were not offered into evidence during trial or a post-trial hearing. The record shows the trial court did not conduct a hearing on Hodge's Motion for New Trial to allow the State an opportunity to respond to the Motion, which was overruled by operation of law. "[P]ost-trial motions [] are not self-proving and any allegations made in support of them by way of affidavit or otherwise must be offered into evidence at a hearing." *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009); *see McIntire v. State*,

18

698 S.W.2d 652, 658 (Tex. Crim. App. 1985) (stating a hearing is required to introduce an affidavit supporting a new trial into evidence); *Lamb v. State*, 680 S.W.2d 11, 13 (Tex. Crim. App. 1984) (concluding there was no evidence to support appellant's claim the State failed to disclose exculpatory evidence because appellant failed to properly present his motion and offer his supporting affidavits into evidence). The rule requiring affidavits to be admitted into evidence permits the non-moving party an opportunity to respond to the allegations in affidavits before a conviction can be reversed on that basis. *See Rouse*, 300 S.W.3d at 762-63. The rule also applies to new trial motions that implicate federal constitutional issues. *See id.*

Since Hodge failed to properly present his Motion for New Trial and offer his supporting affidavits into evidence at a hearing on his Motion, we cannot consider the affidavits as evidence. *See Rouse*, 300 S.W.3d at 762; *McIntire*, 698 S.W.2d at 658; *Lamb*, 680 S.W.2d at 13. Additionally, Hodge failed to point to any evidence in the record showing the State knew the set of brass knuckles existed during trial and that the State willfully or inadvertently suppressed the evidence. We hold there is no evidence in the record supporting Hodge's *Brady* claim. *See* Tex. R. App. P. 38.1(i) (stating issues must be based on the trial record). Accordingly, we overrule issue two.

19

<u>Second Trial - Possession of a Controlled Substance</u>

*Lost Punishment Record*

In issue one, Hodge contends he is entitled to a new punishment trial because "[p]ractically all" of the recording was lost or destroyed and cannot be replaced or agreed upon. Hodge argues that during the punishment trial, defense counsel "engaged in unusual behavior" by both stipulating to his prior convictions and denying the enhancement allegations. According to Hodge, he was harmed by the lost record because he cannot provide sufficient support for his claim of ineffective assistance of counsel.

Rule 34.6(f) of the Texas Rules of Appellate Procedure provides that an appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or--if the proceedings were electronically recorded--a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record . . . is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties . . . .

Tex. R. App. P. 34.6(f) (Reporter's Record Lost or Destroyed). "Whether a missing portion of a reporter's record is necessary to the appeal's resolution is essentially a

harm analysis." *Foster v. State*, 525 S.W.3d 898, 906 (Tex. App.—Dallas 2017, pet. ref'd) (citing *Routier v. State*, 112 S.W.3d 554, 571 (Tex. Crim. App. 2003)) (other citation omitted).

The record shows during a bench conference outside the presence of the jury, the parties were discussing whether to proceed with the punishment trial that afternoon or the following day. During the bench conference, Hodge's trial counsel advised the State and the trial court that Hodge would stipulate to his prior judgments that were entered in the first trial but would plead not true to the enhancement. Hodge's counsel explained that "it's a credibility thing at that point[,]" and the trial court stated, "Let me meet with both of you in the conference room. Off the record." When the parties returned, the trial court recalled the jury and the record shows there was an "[a]udio malfunction from 2:37 p.m. to 3:36 p.m.; log notes attached[.]" The court reporter's log notes from 2:35 p.m. to 3:36 p.m. consist of twenty-five pages, and the punishment trial concluded the following day.

While Hodge argues he was harmed by the lost record because he cannot provide sufficient support for his claim of ineffective assistance of counsel, he failed to even raise an ineffective assistance of counsel claim in his Motion for New Trial. A bare assertion that a portion of a missing record may show ineffective assistance of counsel is not sufficient to meeting the necessity requirement of rule 34.6(f) because it is "nothing more than pure speculation that the missing record could

21

potentially assist him in his appeal." *See id.* at 907. Moreover, in presenting an ineffective assistance of counsel claim on appeal, absent direct evidence from trial counsel concerning his trial strategy "in the decision-making process, appellate courts are reluctant to the find the record sufficient to overcome the presumption of competence." *See id.* The record shows defense counsel explained that Hodge stipulating to his prior judgments and pleading not true to the enhancement was a "credibility thing[.]"

Based on this record, we conclude that Hodge's bare assertion that the missing portion of the punishment record could potentially assist a claim of ineffective assistance of counsel fails to satisfy the requirement of Rule 34.6(f). *See Routier*, 112 S.W.3d at 571-72. Since Hodge has failed to show that the missing portion of the punishment record is necessary to his appeal, we overrule issue one.

*Brady Violation*

In issue two, Hodge complains that the State's failure to disclose it found a set of brass knuckles in the jacket is some evidence that the jacket was not his. Hodge complains that his defense counsel had no notice of the brass knuckles during trial and that the State should have disclosed the evidence, which was favorable to him and material to either his guilt or punishment. Having already determined that Hodge presented no evidence from the record supporting his *Brady* claim, we overrule issue two.

22

<u>Second Trial - Aggravated Assault of a Public Servant</u>

*Brady Violation*

In his sole issue, Hodge again complains he deserves a new trial due to the State's alleged *Brady* violation of failing to disclose it found a set of brass knuckles in the jacket. Since Hodge failed to present evidence to support his complaint, we overrule his sole issue.

## CONCLUSION

Having overruled all of Hodge's issues in his three cases on appeal, we affirm the trial court's judgments in trial cause number CR23-0359 for evading arrest or detention with a motor vehicle, trial cause number CR23-0363 for aggravated assault of a public servant, and trial cause number CR23-0362 for possession of a controlled substance.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on November 22, 2024
Opinion Delivered April 30, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.